*L. M. Friedman*, for the petitioner.
*J. E. McConnell*, for the respondent.

---

COMMONWEALTH *vs.* CHESTER S. JORDAN.

Middlesex.    November 17, 18, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Homicide. Pleading, Criminal,* Indictment. *Practice, Criminal,* Motion for disclosure of evidence of Commonwealth, Jurors, New trial. *Constitutional Law. Jury and Jurors. Superior Court,* Jurisdiction. *Evidence,* Competence, Medical books, Opinion: experts, Presumptions and burden of proof.

Upon the return of an indictment for murder and before the defendant had pleaded to it, he made a motion that the district attorney be ordered to furnish him with a copy of the report of an autopsy of the deceased which had been made by a medical examiner, with a copy of an alleged confession by the defendant to certain police officers, with the names of all witnesses summoned before the grand jury when the indictment was found, with a transcript of the evidence upon which the grand jury found the indictment, and also that the district attorney be ordered to furnish to certain physicians designated by the defendant portions of the body of the deceased taken at the time of the autopsy by the medical examiner. Before the hearing of the motion, the district attorney furnished the defendant with a list of the witnesses who were before the grand. jury. A judge of the Superior Court denied the motion as to all other things asked for by the defendant. *Held,* that the motion was in no just or proper sense a motion for a bill of particulars, and that its denial was within the discretion of the judge; and, *also,* even if it be assumed that the action of the judge was reviewable by this court, there was nothing to call for revision.

While one indicted for murder is entitled, upon making a proper motion therefor, to any information in the possession of the Commonwealth which is necessary

to enable him to understand the nature of the crime with which he is charged and to prepare his defense, there is no rule of law which requires the Commonwealth to disclose to the defendant, on a motion made before the defendant has pleaded, the evidence on which it relies for the proof of the allegations of the indictment, and the defendant has no right to ask for such disclosure.

The statute prescribing, among other forms, a form for an indictment for murder, R. L. c. 218, is not an infringement of article 5 or of article 14 of the Amendments to the Constitution of the United States, or of article 12 of the Massachusetts Declaration of Rights, providing that "no subject shall be held to answer for any cause or offence, until the same is fully and plainly, substantially and formally, described to him," because the statutory form states all that is necessary to enable the accused fully to understand the offense charged and, if, in order to prepare his defense, the accused should require a more particular description of the manner in which and the means by which the alleged crime was committed, and for that reason the indictment may not be regarded as describing the crime "fully and plainly, substantially and formally," his constitutional rights are fully protected by the provisions of R. L. c. 218, § 39, which give him an absolute right to such particulars as it may be necessary for him to have in order to prepare his defense.

The Superior Court is not deprived of jurisdiction of an indictment for a murder returned by a grand jury chosen from lists prepared after St. 1907, c. 348, amending R. L. c. 176, with regard to the methods of choosing jurors, went into effect, by the mere fact that the list of persons qualified to act as jurors, which was prepared by the selectmen of one of the towns in the county, was submitted to and accepted by the voters of the town at a town meeting, which had been necessary under the provisions of R. L. c. 176, § 5, but was rendered unnecessary by the amendment contained in St. 1907, c. 348, § 5.

The provisions of R. L. c. 176, § 5, as amended by St. 1907, c. 348, § 5, requiring delivery to the clerk of the city or town to which the list of persons eligible for jury duty, prepared in accordance with R. L. c. 176, § 4, as amended by St. 1907, c. 348, § 1, relates, and to the clerks and assistant clerks of the Supreme Judicial and Superior Courts in the county in which such city or town is situated, are directory and not mandatory, and such requirements are incidental rather than fundamental; and therefore the Superior Court is not deprived of jurisdiction of an indictment for murder by the mere fact that some members of the grand jury which returned the indictment were chosen in towns where such requirements were not complied with and from names on lists, copies of which were not furnished to the various clerks of towns and of courts as specified in the statute, if the jurors themselves were personally qualified to serve.

The Superior Court is not deprived of jurisdiction of an indictment for murder by the mere fact that one member of the grand jury which returned the indictment, personally fitted to serve thereon, after he was chosen as a juror and before the return of the indictment, had removed from and ceased to be an inhabitant of the town from which he was drawn and had become an inhabitant of another town in the same county, because such removal in itself did not disqualify him from acting as a member of the grand jury.

The mere fact that a printed copy of the list of persons qualified to act as jurors, prepared by the selectmen of a town in accordance with R. L. c. 176, § 4, as amended by St. 1907, c. 348, § 1, was not furnished to the clerk of the town and to the clerks and assistant clerks of the Superior and Supreme Judicial Courts in the county in which the town was situated, as required by R. L. c. 176, § 5, as amended by St. 1907, c. 348, § 5, does not give the defendant in an indictment

for murder a right to challenge for cause a person duly drawn from such list and personally qualified to serve as a traverse juror in the trial of the indictment.

Doubt, expressed by MORTON, J., as to whether it can be said that a defendant in an indictment for murder would not be harmed by being refused the right to challenge for cause a person improperly called to serve as a juror, where, upon such refusal, he exercises his right of peremptory challenge and in the impaneling of the jury does not exhaust the twenty-two peremptory challenges which he is allowed by R. L. c. 176, § 29.

Medical books are not admissible in evidence at a trial for the purpose of showing the views entertained by their authors in regard to matters in issue at the trial.

Where, at the trial of an indictment for murder, there is a question whether a certain cut on the neck of the deceased was made before or after death, the defendant contending that it was made after death and, for the proof of that contention, relying on evidence that it was of a nature described as "inverted," it is not proper in cross-examination of a medical expert called by the Commonwealth for counsel for the defendant, holding in his hand a book from which he apparently was framing the question, to ask the witness, "If Professor B. [who was not a witness in the case or in any way connected with it] . . . said that the inverted edge was evidence of a cut after death would that change the opinion which you now express that the . . . [cut] . . . may be *ante mortem?* ", because an answer to the question would place before the jury in an indirect manner the opinion of Professor B.

At the trial of a criminal case, where there is evidence which tends to prove the facts as assumed in a hypothetical question put by the Commonwealth in cross-examination to an expert witness called by the defendant, the question, if relevant, is admissible, it being for the jury to say whether the evidence proved the facts as assumed.

At the trial of an indictment for murder, where the Commonwealth contended that there was evidence of killing by asphyxiation or strangulation and by blows on the head, and also that there was evidence that the victim's throat was cut during life, the Commonwealth is not obliged to show that the death of the victim was due to any one particular cause, but, if the jury are satisfied beyond a reasonable doubt that death was caused by a combination of injuries inflicted by the defendant, notwithstanding they are unable to determine the exact way in which the victim was killed, a verdict of guilty is warranted.

At the hearing of a motion by the defendant for a new trial of an indictment for murder, based upon a contention that one of the jurors at the time of the trial of the case was insane, the rules relating to criminal practice and procedure do not apply, and the burden is upon the defendant of proving the insanity of the juror and of sustaining by a fair preponderance of evidence the contentions which are the basis of the motion; and, upon exceptions by the defendant to a finding by the judges, who heard the motion, that the juror was not insane, and to a denial of the motion, the question before this court is not as to the weight of the evidence, but only whether there was any evidence to support the finding.

INDICTMENT for murder, as follows:

" At the Superior Court, begun and holden at Lowell within and for the County of Middlesex, on the first Monday of March in the year of our Lord one thousand nine hundred and nine.

" The Jurors for the Commonwealth of Massachusetts on their oath present, that Chester S. Jordan on the first day of September in the year of our Lord one thousand nine hundred and eight at Somerville, in the County of Middlesex aforesaid, did assault and beat Honora C. Jordan with intent to murder her, and by such assault and beating, did kill and murder the said Honora C. Jordan.

" Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

The proceedings before trial are stated in the opinion. The motion for disclosure of evidence of the Commonwealth was heard and denied by *Aiken*, C. J. The demurrer to the plea to the jurisdiction was heard and sustained by *Stevens* and *Bell*, JJ.

The trial was before *Stevens* and *Bell*, JJ. The deceased was the wife of the defendant. There was evidence for the Commonwealth tending to show that the defendant and his wife had quarrelled in the evening of September 1, 1908, that he had struck her with the sharp corner of a flatiron, and that she had fallen to the floor ; that subsequently he had severed her head from her body, had dismembered the body, placing parts of it in a trunk, burning other parts and placing others in the furnace of the apartment where he lived ; that he had caused an express-man to take the trunk to the South Station in Boston, and later caused a hackman to take the trunk and himself to the Metropolitan steamship docks, stating that he intended to take a boat for New York ; that upon reaching the dock he had changed his instruction to the hackman and had caused himself with the trunk to be driven to a room which he had hired on Hancock Street. There he was visited by policemen, to whom before opening the trunk he told conflicting stories accounting for its presence and contents, and who, upon the trunk being opened, discovered under various articles of woman's apparel parts of the body of the deceased. Later, at the police station, without any show of emotion, the defendant made a confession in which he stated that, after some quarrelling, his wife approached him with a carving knife as though to strike him and he struck her, knocking her down stairs, that thereafter his mind was a blank for over a day, and that then he dismembered and disposed of the body as above stated.

The chief defense at the trial was insanity.

Other facts are stated in the opinion.

The requests of the defendant for rulings, described in the opinion, were as follows:

" 15. If the jury are left in reasonable doubt as to whether the throat was cut in life or within thirty minutes after death, then upon all·the evidence in the case all the incised cuts upon the body including the throat cut itself are to be eliminated from the case in reaching their conclusions.

" 16. There is no sufficient evidence in the case to warrant the jury in finding beyond a reasonable doubt that the throat of the deceased was cut during life.

" 17. In the case at bar it is not proved beyond a reasonable doubt that the throat of the deceased was cut during life

" 18. Upon all the evidence in the case it is not established beyond a reasonable doubt that any of the incised cuts upon the body of the deceased were made before death.

" 19. Upon all the evidence in the case it is not proved beyond a reasonable doubt that the blows upon the head were the cause of the death of the deceased.

" 20. Upon all the evidence in the case it is not proved beyond a reasonable doubt that the deceased came to her death through strangulation or asphyxiation.

" 21. Upon all the evidence in the case it is not proved beyond a reasonable doubt that the deceased came to her death by cutting of the throat, blows upon the head, strangulation or asphyxiation or by the combination of any or all of these.

" 22. It is not proved beyond a reasonable doubt upon all the evidence in the case how the deceased came to her death.

" 23. It is not proved beyond a reasonable doubt upon all the evidence in the case how the deceased came to her death, and as a matter of law the jury for this reason cannot return a verdict of murder in the first degree."

" 36. If the jury find that the deceased came to her death through choking by the defendant, that fact alone is not sufficient to warrant the jury in returning a verdict of guilty of murder in the first degree."

The jury found the defendant guilty of murder in the first degree; and the defendant alleged exceptions.

*H. H. Pratt & A. T. Smith,* (*C. W. Bartlett & J. S. Sullivan* with them,) for the defendant.

*J. J. Higgins,* District Attorney, for the Commonwealth.

MORTON, J.  This was an indictment for the murder by the defendant of one Honora C. Jordan, who was his wife.  There was a verdict of guilty of murder in the first degree, and the case is here on the defendant's exceptions and on his appeal from an order sustaining a demurrer to a plea to the jurisdiction.  There are two bills of exceptions, the first relating to matters arising at and during the trial and prior thereto, and the other to matters arising at the hearing on the motion for a new trial.

We take up first the first bill of exceptions, and shall consider the various exceptions so far as practicable in the order in which they were taken.

Upon the return of the indictment and before the defendant had pleaded to it he made a motion that the district attorney be ordered to furnish him with a copy of the autopsy made by Thomas M. Durell, M.D., the medical examiner, and of the alleged confession by the defendant to the police officers of Boston; also that he be ordered to furnish the defendant's attorneys with the names of all of the witnesses summoned before the grand jury when the indictment was found, and with a transcript of the evidence upon which the grand jury found the indictment, and to afford them an opportunity to inspect all weapons and other exhibits and things in the possession of the district attorney; and lastly, that the district attorney be ordered to furnish to certain physicians designated by the defendant portions of the body taken at the time of the autopsy by the medical examiner. Before the hearing upon the motion the district attorney in accordance with the practice which prevails here (*Commonwealth* v. *Edwards,* 4 Gray, 1; see also R. L. c. 218, § 9), furnished the defendant with a list of the witnesses before the grand jury but declined to do any of the other things specified in the motion.  The motion was heard by *Aiken,* C. J., and was denied except as to the list of witnesses before the grand jury which the district attorney had already furnished to the defendant.  As to that it was granted.  The defendant excepted to the refusal to allow the motion in respect to the other particulars specified.  As to those matters it is plain, we think,

that it was within the discretion of the judge to grant or refuse the motion.    The motion was not in any just or proper sense a motion for a bill of particulars, but was rather an attempt (we do not use the word " attempt " in any invidious sense) to compel the Commonwealth to disclose, in part at least, the evidence on which it relied.    There is no rule of law which requires the Commonwealth to do that, or which gives a defendant the right to ask it.    So far as the information specified, or any other information in the possession of the Commonwealth, was necessary in order to enable the defendant to understand the nature of the crime with which he was charged and to prepare his defense, he was entitled to have it furnished to him in the shape of a bill of particulars, upon a proper motion to that effect.    But as we have said, this was not such a motion.    The office of a bill of particulars is not to compel the Commonwealth to disclose its evidence, but to give the defendant such information in addition to that contained in the complaint or indictment in regard to the crime with which he is charged, as law and justice require that he should have in order to safeguard his constitutional rights and to enable him fully to understand the crime with which he is charged and to prepare his defense.    Undue stress should not be laid upon the form of the motion, but it should at least appear that without the information which is desired justice will not or may not be done.    See *Commonwealth* v. *Snelling*, 15 Pick. 321.    There is no statutory provision requiring the district attorney to furnish the defendant with a copy of the report of the autopsy, though of course he can do so if he sees fit. See R. L. c. 24, § 10.    In the present case, even if we assume in favor of the defendant without so deciding, that we have power to revise the action of the Superior Court, we discover nothing that should lead us to do so.    This exception must therefore be overruled.    It should be added that, although the exception was to a ruling by the Chief Justice, it seems to have been incorporated without objection into the bill of exceptions allowed by the Justices who presided at the trial, and we have dealt with it accordingly.

At the same time that the defendant filed the motion which we have been considering, he also filed a motion to quash the indictment on the ground that the alleged offense was not fully,

plainly, formally and substantially described, or described in such a manner as to apprise the defendant of the exact nature and cause of the offense intended to be charged, or to enable him to avail himself of his conviction or acquittal in a further prosecution for the same crime ; or to inform the court of the facts alleged so that it could decide whether they were sufficient to support a verdict if one was rendered against the defendant; and also on the ground that R. L. c. 218, under which the indictment was drawn, was unconstitutional and void under article 12 of the Massachusetts Declaration of Rights and articles 5 and 14 of the Amendments to the Constitution of the United States. The motion to quash was overruled and the defendant excepted. The indictment is in the form prescribed for murder in the " Schedule of Forms of Pleadings " annexed to R. L. c. 218. There is no count at common law, and that is said by the defendant to distinguish this case from other cases of indictment for murder in which similar questions as to the constitutionality of the statute have been raised. It is true, as the defendant contends, that in previous cases of murder there has been a count at common law added to the count under the statute; but nevertheless we think that the question as to the constitutionality of the statute must be regarded as having been settled in the affirmative by previous decisions in a variety of cases and, it seems to us, rightly so. Commonwealth v. McDonald, 187 Mass. 581, 585. Commonwealth v. Snell, 189 Mass. 12. Commonwealth v. Sinclair, 195 Mass. 100. Commonwealth v. Bailey, 199 Mass. 585. Commonwealth v. King, 202 Mass. 379, 384. In Commonwealth v. Storti, 177 Mass. 339, the court expressly declined to give any countenance to the suggestion that the statute was unconstitutional. The purpose of the constitutional provisions relied on is to secure to the accused such a description of the offense with which he is charged as will enable him fully to understand it and to prepare his defense. Commonwealth v. Robertson, 162 Mass. 90. So far as enabling a defendant to understand the offense with which he is charged is concerned, there can be no just ground of objection to the statutory form of indictment. If A. is charged in an indictment with having at a certain time and a certain place which are specified assaulted and beaten B. with the intent to murder him,

and with having by such assault and beating killed and murdered the said B., A. cannot fail to understand from the indictment itself that the crime with which he is charged is the murder of B. at the time and place specified. Allegations as to how he killed B. would not help him to understand any better the crime with which he is charged than, as was said in substance by Wells, J., in *Commonwealth* v. *Woodward*, 102 Mass. 155, 160, a particular description of the wound would help the defendant to understand for what injury he was called upon to answer. No question could arise as to the sufficiency of the facts alleged to support a conviction, or to embarrass the defendant if he should have occasion to file a plea of former conviction or acquittal. If the defendant should require a more particular description of the manner in which and the means by which the alleged crime was committed in order to enable him to prepare his defense, and the indictment could not for that reason be regarded as describing the crime charged " fully and plainly, substantially and formally," the statute (R. L. c. 218, § 39) gives him an absolute right to such particulars as it may be necessary for him to have in order to prepare his defense, and his constitutional rights are thus fully protected. *Commonwealth* v. *Snell, supra*. *Commonwealth* v. *McDonald, supra*. *Commonwealth* v. *Sinclair, supra*. *Commonwealth* v. *Bailey, supra*. *Commonwealth* v. *King, supra*. The means by which a murder is committed do not constitute an essential part of the crime and therefore need not be alleged in the indictment under R. L. c. 218, § 21. It is no doubt true, as contended by the defendant, that allegations as to the means by which and the manner in which the homicide was effected were formerly regarded as essential to the validity of an indictment for murder. But the object of the statute is to simplify criminal pleading, and the question before us is, whether, in its efforts to do so, the Legislature has gone so far as to infringe upon the constitutional rights of the accused. For reasons given above we do not think that it has. It follows from the construction and effect which we have given to the statute that, as was said by the Supreme Court of the United States in a case arising under a somewhat similar statute in New Jersey : " It cannot be held that he [the prisoner] was proceeded against under an indictment based upon statutes

denying to him the equal protection of the laws, or that were inconsistent with due process of law, as prescribed by the Fourteenth Amendment of the Constitution of the United States," (*Bergemann* v. *Backer*, 157 U. S. 655, 658,) or, we may add, by the Fifth Amendment. This exception also must be overruled.

The defendant seasonably filed a plea to the jurisdiction on the ground that the grand jury which returned the indictment was irregularly and unlawfully summoned and convened, in that in the towns of Bedford, Weston and Sudbury the list of persons prepared by the selectmen was unlawfully presented to and acted upon by the voters of said towns, and no lists of jurors from which jurors were to be drawn were prepared by the selectmen of said towns, and no lists were filed with either the town clerk of said towns or with the clerk or assistant clerk of the Supreme Judicial or the Superior Court for the County of Middlesex; and also by reason of the alleged fact that the selectmen of Ayer, Framingham and Westford, from which members of said grand jury were drawn, had not filed with the clerk and assistant clerk of the Supreme Judicial and Superior Courts lists of jurors as required by law; and further because one Norbert M. English, who had been summoned as a member of said grand jury from Bedford and was acting as such when the indictment was returned, was not an inhabitant of Bedford but of Lexington. The Commonwealth demurred to the plea. The court, *Stevens* and *Bell*, JJ., sustained the demurrer and overruled the plea, and the defendant appealed.

We think that the demurrer was rightly sustained. There is nothing to show and it is not claimed that any of the persons from the towns of Bedford, Weston and Sudbury, or from the other towns named were personally disqualified or unfit or incompetent to serve. Although the plea alleges that no lists of jurors were prepared by the selectmen of the towns of Bedford, Weston and Sudbury, or either of them, the affidavits annexed to the plea and referred to in it and made a part of it show that lists were prepared by the selectmen, and in two instances, Bedford and Sudbury, were submitted to and accepted by the voters, and that in the other, Weston, a list was submitted to but not acted on by the voters, on account of an amendment to the law in the preceding year. There is nothing to

show that venires were not regularly issued and served, or that the jurors were not drawn from the lists prepared by the selectmen in the manner provided by law, or that in preparing the lists the selectmen did not observe the statutory requirements in regard to the persons placed thereon. The irregularity which occurred in submitting the lists to the voters in the two towns of Bedford and Sudbury could have had no effect upon the lists because the voters voted to accept them. Nor were the lists affected in the case of those towns and the other towns named by the failure of the selectmen to file with the town clerk and the clerk and assistant clerk of the Supreme Judicial or Superior Court lists of jurors as required by statute. (St. 1907, c. 348, § 5.) Such failure did not and could not affect in any way the qualifications of the jurors or the preparation of the lists, or the manner of drawing jurors, or the constitution of the jury as finally determined, and the provisions referred to must therefore be regarded as directory and not mandatory; in other words although it no doubt was expected that the scrutiny to which the lists would be thereby subjected would aid still further in the elimination of objectionable persons from juries, the requirements in question are to be regarded rather as incidental than as fundamental.

In the matter of English it does not appear that the selectmen of Bedford knew when English was drawn as a juror from that town that he had removed to Lexington, if indeed he had. The allegation of the plea is that at the time of the finding and return of the indictment he was not an inhabitant of Bedford, not that at the time when he was drawn he was not an inhabitant of Bedford. If he was an inhabitant of Bedford when drawn it would seem that that was enough, and that his subsequent removal before the finding and return of the indictment did not disqualify him from acting with the grand jury. But however that may be, and even if his action in sitting on the grand jury after his removal to Lexington was irregular and improper, the case comes clearly within the principle laid down in *Commonwealth* v. *Brown*, 147 Mass. 585, 593, where one whose name had been ordered by a vote of the town to be stricken from the list was nevertheless drawn as a juror by the selectmen and returned to court as such and was

sworn as one of the grand jury and acted with them in their deliberations and the return of the indictment. It was held that as there was nothing to show that he was disqualified, or that his being drawn was anything more than an irregularity, a ruling of the trial court that the presentment was valid was correct. See also *Commonwealth* v. *Moran*, 130 Mass. 281; *Commonwealth* v. *Parker*, 2 Pick. 550; *Amherst* v. *Hadley*, 1 Pick. 38.

What we have said in regard to the matter of filing lists with the clerk or assistant clerk of the Supreme Judicial and Superior Courts applies to the case of the juror Wallace from Framingham, whom the defendant contended that he had a right to challenge for cause, since it appeared that the list prepared by the selectmen of Framingham, upon which was his name, had not been filed with the clerk of the Supreme Judicial Court or with the clerk of the Superior Court within the time required by law, it appearing that the list should have been filed on or before the first day of August, 1908, but was not in fact filed until the thirteenth day of April, 1909. The court ruled that the failure to file the list was not cause for challenge, and the defendant excepted. Thereupon the juror was peremptorily challenged by the defendant, and it appeared that when the panel was completed the defendant had not exhausted his peremptory challenges. We doubt whether it can be said as contended by the Commonwealth that the defendant was not harmed by the ruling. But however that may be, we think that for reasons previously stated, and which it is unnecessary to repeat, the ruling was right. It follows that the order sustaining the demurrer and overruling the plea must be affirmed, and the exception to the ruling in regard to the juror Wallace must be overruled.

Certain exceptions which were taken to the admission of certain evidence have been waived, and therefore need not be considered. Other exceptions to the admission of evidence have not been waived, and are relied on and we proceed to consider them. There was evidence that the head had been severed from the body by two cuts, one in the back of the neck and the other in the throat in front severing the arteries. It was in dispute whether the cut in the throat was made before or after death. One of the things relied on by the defendant to show that the cut was made after death and therefore was

not a cause of death was that it was what was termed "inverted." In the course of the cross-examination by the defendant of Dr. Durell, the medical examiner for the second district of Middlesex County, he was asked, counsel at the time holding in his hand a book from which he was apparently framing the question, " If Professor Balch of the Albany Medical School said that the inverted edge was evidence of a cut after death would that change the opinion which you now express that the . . . [cut] . . . may be *ante mortem ?* " Upon objection by the district attorney the question was excluded and the defendant excepted. The question, though put perhaps *alio intuitu,* would if allowed to be answered have placed before the jury in an indirect manner the opinion of Professor Balch who was not a witness in the case or in any way connected with it, and was referred to simply as a medical authority, and it was therefore rightly excluded. It is well settled in this Commonwealth that medical books are not admissible in evidence for the purpose of showing the views entertained by their authors in regard to the matters in dispute. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 139. The exception is overruled.

It was for the jury to say whether there was evidence which warranted the existence of the events assumed to exist in the hypothetical question put on cross-examination by the district attorney to Dr. Councilman, an expert called by the defendant, and their sequence if that was material. It could not have been ruled as requested that there was no evidence warranting the question in the form in which it was finally put. The exception to its admission must, therefore, be overruled.

Numerous requests for instructions were presented. Many of them were given in substance as requested. Others were given with some modification, and the rest were refused. A number of those refused have been waived or abandoned. It is necessary, therefore, that of those originally presented only the ones now relied on should be considered. Those are the requests numbered 15 to 23, inclusive, and the request numbered 36.

The Commonwealth contended that there was evidence of asphyxiation or strangulation, and of blows on the head, and also that there was evidence that the throat was cut during life. It also claimed that it was not obliged to show the exact sequence

of the events which resulted in the homicide, or to show that death was due to any one particular cause, but that it was sufficient if the jury were satisfied beyond a reasonable doubt that death was caused by a combination of injuries inflicted by the defendant notwithstanding they were unable to determine the exact way in which the deceased was killed; and the court in substance so instructed the jury.   What the court said was, after instructing the jury in regard to the effect to be given to the evidence of mutilation after death, and after giving the ruling requested by the defendant's request in relation thereto, " In this case the exact manner in which he [the defendant] killed his wife, I shall instruct you, is not material.   The question is, Did he kill her, and was he sane when he killed her, and was it done with deliberately premeditated malice aforethought, or with malice afterthought?   The exact mode it may be impossible for you or for any one else to determine, but the failure to determine the exact way in which she was killed is not to exempt this defendant from punishment provided he did kill her, and killed her with such intention and under such circumstances as to constitute a crime against the law."   The court had previously instructed the jury in regard to the degrees of murder, and the burden of proof and the matter of reasonable doubt in a manner to which no exception was taken by the defendant.   The requests relied on were to the effect, in one form or another according to the phase of the case with which they dealt, that it was not proved beyond a reasonable doubt that the deceased came to her death in any one of the possible ways testified to.   The court was asked to rule, for instance, that " it is not proved beyond a reasonable doubt that the throat of the deceased was cut during life."   And the same request was made in regard to death from the blows on the head, and death by strangulation, — the defendant seeking thus to eliminate one by one, as causes of death, the cutting of the throat, the blows upon the head and strangulation, and then contending that inasmuch as it was not proved beyond a reasonable doubt that either one of those things was the cause of death, it followed that death could not have been occasioned by a combination of any or all of them and, therefore (to carry out the reasoning to its logical conclusion), that the Commonwealth had failed to show that the defendant

murdered his wife, although it was certain, according to his own confession, that he and no one else killed her. The error lies in the assumption which runs through all of the requests relied on that it was necessary for the Commonwealth to show beyond a reasonable doubt the exact mode in which the deceased came to her death. The Commonwealth was bound to show beyond a reasonable doubt that the deceased had been murdered and that the murder was committed by the defendant. It was also bound, as the court instructed the jury, to prove beyond a reasonable doubt every fact necessary to establish those conclusions. If the manner in and the means by which a murder is committed constitute an essential part of the crime, or if a jury could not as matter of fact or as matter of law find that a murder had been committed, if they were unable to find beyond a reasonable doubt the exact mode in which death had been caused, then the instructions requested should have been given. But neither one of the propositions thus suggested is true. The court correctly instructed the jury that the exact manner in which the defendant killed his wife was immaterial, and that the fact that it was impossible to determine the exact way in which she was killed would not serve to acquit the defendant provided the act of killing constituted otherwise a crime. It follows that the requests now relied on were rightly refused and that the defendant's exceptions to such refusal must be overruled.

The result is that we discover no error in the rulings and refusals to rule in regard to what took place at and during and before the trial.

We pass to the second bill of exceptions. The verdict was rendered on Tuesday, May 4, 1909, the case having been on trial since April 20. On the eighth day of the same May, four days after the verdict, Willis A. White, who had been drawn as a juror from Maynard, and who was one of the panel during the trial and at the time when the verdict was rendered, was committed to the insane hospital at Worcester. On the tenth of May the defendant filed a motion for a new trial on the ground that said White was insane during the trial and when the verdict was rendered. There was a lengthy hearing upon the motion. At the conclusion of the testimony the defendant made a large number of requests for rulings and findings, — seventy-two in all.

The presiding judges overruled the motion and found and ruled as follows: " We find by a fair preponderance of all the evidence as a fact that the juror Willis A. White was of sufficient mental capacity during the entire trial of Chester S. Jordan until after the verdict was returned, to intelligently consider the evidence, appreciate the arguments of counsel, the rulings of law, the charge of the court, and to arrive at a rational conclusion, and therefore we deny the motion. Having found the above fact, we deem it unnecessary to consider the requests for rulings."

The defendant appealed from and excepted to the order overruling the motion, to the findings aforesaid, and to the refusal to rule and find as requested in the seventy-two rulings and findings that were asked for. All of the material evidence taken at the hearing upon the motion is before us. Although the requests were so numerous and voluminous, the issues, as the defendant himself concedes, are comparatively simple.

The principal question relates to the burden of proof and the rule to be applied in weighing the evidence on the question of the juror White's sanity or insanity. If on an issue between the Commonwealth and the defendant as to the sanity of a juror during the trial and at the time of the rendering of the verdict, raised by the defendant by a motion for a new trial, the burden is, as the defendant in substance asked the court to rule, on the Commonwealth to show beyond a reasonable doubt that the juror was sane, then clearly some of the rulings asked for — it is not necessary to decide which — should have been given and the defendant's exceptions should be sustained. There can be no doubt that the defendant has a right to insist that the panel which tries him should consist of twelve sane jurors. And there can be no doubt that if without his knowledge or that of his counsel one of the jurors to whom his case was submitted was insane during the trial and at the time when the verdict was rendered he has not had such a trial as is guaranteed to him by the Constitution of this Commonwealth and by the Constitution of the United States. It is practically agreed that neither the defendant nor his counsel had any knowledge of White's alleged insanity until after the verdict, and therefore no question can arise as to the defendant's right to avail himself of the alleged insanity.

Ordinarily the party asserting the affirmative of an issue has the burden of proof, and we do not see why the ordinary rule should not apply here. The defendant asserts that one of the jurors was insane during the trial and when the verdict was rendered, and that therefore the verdict should be set aside. It is for him to prove what he says, not beyond a reasonable doubt, but by a fair preponderance of the whole testimony. The inquiry into the sanity or insanity of the juror is not an investigation into an alleged crime, and has none of the elements of such an investigation, and the rules relating to criminal practice and pleading are, therefore, in no way applicable to it. Nor is the sanity or competency of the jury in any way involved in the question of the defendant's guilt or innocence. It is not in the remotest degree an issue in the case. If a question is raised as to the defendant's sanity, that becomes thereby an issue, and the burden is on the Commonwealth to show that he was sane. But that has nothing to do with the question whether a juror was sane or insane during the trial. The Commonwealth was and is no more responsible for the presence upon the panel of the juror . White than the defendant or the court. As finally constituted the jury was the tribunal appointed by law for the trial of the case. Its members were selected in the manner provided by law from the body of the citizens of the county, and in case a question arose during or after the trial as to the sanity or insanity of one of them the burden was upon the party alleging the insanity to prove it by a fair preponderance of the evidence, not upon the Commonwealth to show that the juror was sane. It follows from what we have said that the only question that remains is whether there was evidence which warranted as matter of law the findings of fact made by the trial court upon the motion for a new trial. We assume in favor of the defendant that the presiding judges overruled the motion for a new trial not merely in the exercise of their discretion but because they found the facts which they did upon a fair preponderance of the evidence. We do not see how it can be said that there was not evidence warranting their findings.

When the time for the hearing upon the motion approached, counsel for the defendant addressed a communication to the court stating that they deemed it advisable that all of the jurors

except White should testify, and asking the direction of the court in regard to the matter. The court replied saying that if any of the jurors were called all should be, and that they should be put upon the stand without any previous communication with any one. Thereupon the other eleven jurors were summoned and testified. Of the eleven jurors who thus testified seven said in substance and effect that they saw nothing during the trial in the actions, speech, manner or conduct of White different from that of the ordinary, sane, normal man. The other four jurors were all cross-examined by the district attorney; one testified on such cross-examination that it did not occur to him at any time that Mr. White was insane or that he did not understand the proceedings; another, that until after the verdict he did not see anything in White's acts, speech or conduct that showed that he did not understand the proceedings and the part he took in them, or that his memory was defective; and a third that he did not notice anything about White's memory that was defective any more than that of any other of the jurors, and that he appeared to be as much interested in the trial as any other juror. In addition to the testimony of the jurors there was testimony from Dr. Quinby, the superintendent of the Worcester Asylum to which White was committed, that in his opinion White was sane until the day after the verdict, and that his insanity then was due to the reaction from the strain and stress of the trial and other matters. There was also testimony from the family physician and others tending to show that White was sane. On the other hand there was testimony from medical experts on insanity, including Dr. Jelly, Dr. Sanborn, superintendent of the State Asylum at Augusta, Maine, and Dr. McDonald, formerly at the Butler Asylum for the Insane at Providence, to the effect that in their opinion he was insane during the trial and when the verdict was rendered. There was also testimony tending to show that insanity was hereditary in the family; and there was testimony from neighbors and friends tending to show that he was insane. Letters written by him during the trial which, it was maintained, also tended to show that he was insane, were introduced in evidence. The question before us, however, is not as to the weight of the evidence, but whether it can be said as matter of law that the findings were not warranted by the evi-

dence.   It is plain, it seems to us, that it cannot be so ruled.   It follows that the exceptions to findings and rulings and refusals to rule on the motion for a new trial must be overruled.

>   *Order sustaining demurrer to the plea to the jurisdiction affirmed ; exceptions contained in both bills of exceptions overruled.*