STATE OF IOWA, Appellee, v. ROSCOE BURCH, Appellant.

**CRIMINAL LAW:** Accessories—Corroboration—Sufficiency of Evidence. Evidence reviewed, in a prosecution for larceny, and held
1    amply to present a jury question on the issue of corroboration.

**CRIMINAL LAW:** Accomplices—Aiding and Abetting—Nonprejudicial
2    Instructions. It is not prejudicial error to instruct on the subject
of aiding and abetting, on a record showing that both parties to
a prosecution *directly committed* the offense charged.

**CONSTITUTIONAL LAW:** Federal Amendments — Applicability.
3    Principle reaffirmed that the first ten amendments to the Federal
Constitution have no applicability to the several states of the
Union.

**CONSTITUTIONAL LAW:** Criminal Law—Charging Accessory as
4    Principal. The statutory abolition of the distinction between an
accessory before the fact and a principal is not unconstitutional on
the theory that to charge an accessory before the fact *as a principal*
is depriving him of his constitutional right "to be informed of the
accusation against him" and of his right "to have a copy of the
accusation;" and especially is this true in view of our statutes
requiring (1) the specification of facts in an indictment and (2)
.the furnishing to the accused of a copy of the indictment and of
the minutes of testimony on which it was returned.

Headnote 1.  16 C. J. pp. 712, 714.  Headnote 2.  17 C. J. p. 339.  Headnote 3.  12 C. J. p. 744.  Headnote 4.  31 C. J. p. 740.

*Appeal from Madison District Court.*—W. G. VANDER PLOEG,
Judge.

OCTOBER 24, 1924.

REHEARING DENIED JANUARY 16, 1925.

DEFENDANT appeals from a conviction of larceny and the
judgment sentencing him to the penitentiary.  For the former
opinion in this case, see *State v. Burch,* 195 Iowa 427.—*Affirmed.*

*J. M. Parsons, E. W. Dingwell,* and *A. W.* and *Phil R. Wilkinson,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, and *Leo C. Percival,* County Attorney, for appellee.

STEVENS, J.—Appellant and one Walter DeBord were indicted, separately, by the grand jury of Madison County, for larceny. The larceny, if participated in by appellant, was accomplished on the night of June 18, 1921. The property alleged to have been stolen belonged to one Tom Jackson, and consisted of ten hogs, averaging in weight about 250 pounds, described in the evidence as "six red, three black, and one white hogs." DeBord entered a plea of guilty, and, at the time of the trial, had been released from the penitentiary. Appellant has been twice tried and twice convicted by the jury. The first conviction was set aside, upon appeal to this court, on account of error of the court in the admission of incompetent evidence. DeBord testified for the State upon both trials.

1. CRIMINAL LAW: accessories: corroboration: sufficiency of evidence.

Many propositions are relied upon by appellant for reversal, some of which can be disposed of only upon a brief statement of the facts and conclusions established by the evidence. The following facts were established either by undisputed or ample competent evidence, to wit: that Walter DeBord was employed, at the time it is charged in the indictment that the crime was committed, by appellant, and resided on a farm leased by him, 3 miles east of Booneville, Dallas County, which is about 26 miles northeast from another farm leased by appellant, on which he resided; that the farm on which appellant resided was located about 5 miles west of Winterset, and adjoined the premises occupied by Tom Jackson; that, sometime about midnight of June 18th, appellant and DeBord loaded some hogs onto a Ford truck, in a yard adjoining the former's residence; that DeBord, immediately after the loading was completed, drove the truck away, intending to take the hogs to the Booneville farm; that, before he left, appellant agreed to meet him at a place 15 or 16 miles northeast from his home, and assist him over what is

known as the Berger hill; that DeBord was overtaken at the place designated, and was assisted up the hill by appellant, who attached his Buick car to the Ford truck with ropes; that thereupon, appellant returned home, arriving about daylight, Sunday morning; that, while the Ford truck waited at the Berger hill for appellant to arrive, or while it was in that immediate vicinity, one Roy Beedle and one John Kitchell observed the hogs, under circumstances that gave them an opportunity to learn the color and number thereof; that DeBord arrived at the Booneville farm, where he resided, about 6 o'clock A. M., June 19th; that, during that day, several neighbors who visited DeBord saw red and black hogs on his premises; that, on the following Thursday, DeBord sold six red hogs and one black hog, which had been stolen from Tom Jackson, to one Robinson at Booneville, for which he received a check payable to himself for $127.50.

. The evidence further disclosed that appellant had no red hogs on his premises west of Winterset, and that Tom Jackson owned a herd of 206 hogs, most of which were red. All of the above matters were established by the evidence, independent of the testimony of DeBord, who, in addition thereto, stated that he and appellant arranged, about a month before the night on which the crime was committed, to steal the hogs, and that they waited about appellant's premises until midnight on Saturday night, and then took the Ford truck to a place in a narrow, unfrequented lane, about half way between appellant's home and Jackson's premises, where they left it until they went to Jackson's hog lot, opened a gate, and appellant drove six red hogs, three black ones, and one white hog into the lane, through which the hogs were driven into the lot, where they were loaded into the truck which DeBord had driven back to the yard and placed in position for loading the hogs; that he and appellant, unassisted and without the presence of any other person, loaded the hogs into the truck; and that he drove it away, as we have already detailed.

Appellant, his wife, and three men testified that they were present when the hogs were loaded; that they were all black but one, which was red, and which, according to the testimony of appellant, had been brought in the truck from the Booneville

farm the same day. Mrs. Burch also testified that she and the children accompanied her husband in the Buick car to the Berger hill, and that they returned home about daylight Sunday morning. Three other witnesses called by appellant testified that they had been fishing all night Saturday night; that they saw DeBord shortly after 5 o'clock in the highway near the gate which entered his premises; that they observed the color.of the hogs; and that they were all black except one red hog and one white one.

Alvin Terry, another witness for the State, testified that he was working for appellant on the Booneville farm; that, on Sunday afternoon, he went from Winterset with him and his wife; that, when they arrived, there were six or ten red hogs in the feed lot that were not there the day before; and that appellant went with him to the lot, where he had opportunity to observe them.

We come now to take up the several propositions relied upon by appellant for reversal.

I. The larceny charged in the indictment was committed, if at all, by appellant and Walter DeBord. They were, therefore, accomplices, and, under the statute, Section 5489, Code of 1897, a conviction could not be had upon the testimony of DeBord alone. Other evidence which tended to connect defendant with the commission of the crime was necessary to a conviction. It is contended by appellant that the testimony of DeBord is without the required corroboration.

The narrow lane, which was little used for travel, furnished a convenient means of communication between the premises on which appellant resided, and the Jackson hog lot. Will Jackson, a brother of Tom's, and James, his father, testified that, on Thursday after the events narrated, they examined the lane above described, and saw hog tracks leading from the gate into the lane, and followed them to within a short distance of appellant's residence. Appellant introduced the testimony of several witnesses, for the purpose of showing that any hog tracks made in the lane on the night in question must necessarily have been completely obliterated at the time the witnesses claim to have discovered them. This evidence was objected to upon the ground that it was incompetent, irrelevant, and too remote in point of

time to be admissible. We think it was admissible, the weight of it being for the jury. None of the parties who claimed to have knowledge of the use made of the lane after Saturday night, and before it is claimed the tracks were discovered, saw any hog tracks, or perhaps had any occasion to look therefor. The evidence does not show that the tracks were, or might have been, obliterated at the gate or for some distance away therefrom. The corroboration furnished by this evidence, when considered in the light of the record as a whole, is not very conclusive; but we think the testimony of DeBord is otherwise abundantly corroborated. Appellant admitted that he told DeBord to sell a load of the heavier hogs. The witness Terry testified that he went from the Booneville farm with appellant and DeBord on Saturday afternoon in the truck, and that they did not take a red hog with them, as claimed by appellant. The proceeds received from the sale of the hogs to Robinson were traced only into the hands of DeBord. The evidence of the witness Terry, together with that of Beedle and Kitchell, is corroborative of the testimony of DeBord that the hogs loaded on the Ford truck by him and appellant and taken to the Booneville farm were mostly red in color. Upon appellant's theory that the hogs were his own, and black, they are unaccounted for after he left DeBord at the Berger hill on his way to the farm where he resided. No evidence was introduced to show what became of the black hogs, or that any effort was made by appellant to ascertain where and to whom they were sold. After DeBord had been arrested, and while before the magistrate, appellant stated that the hogs sold to Robinson were his. It was absolutely impossible for DeBord to have disposed of the black hogs and to have substituted red hogs stolen from Jackson during the time which intervened between the time he left the farm and the time when he was overtaken by appellant at the Berger hill. The jury may well have found that the hogs Kitchell and Beedle saw in the truck at the Berger hill were mostly red, and that the hogs delivered by DeBord at the Booneville farm in all respects answered the description of the stolen property. All of the evidence shows that appellant assisted DeBord in loading the truck, and he concedes that he did. The testimony of the several witnesses referred to squarely contradicts appellant's claim that the hogs

were black. . If they were red, which the jury may well have found, appellant deliberately gave false testimony. The only purpose he could have had in so doing was to avoid the inevitable conclusion that he participated in the crime.

Another circumstance which tends strongly to connect appellant with the commission of the crime was the testimony of Mrs. Walter DeBord that she heard appellant say to her husband after his arrest that, if he had taken the hogs to Valley Junction, as he told him to do, he would not have got caught at that time. Mrs. Burch also testified that the hogs which her husband brought to the farm about 6 o'clock Sunday morning consisted of six red, three black, and a white one. If the hogs were appellant's, it could have made no difference whether they were sold at Booneville or Valley Junction. Manifestly, the testimony of DeBord was sufficiently corroborated to require the submission of the cause to the jury.

II. Exceptions to numerous paragraphs of the court's instructions and to the charge as a whole are urged by appellant as presenting reversible error. The particular matters complained of in the instructions are that the court should not have given an instruction on the subject of aiding and abetting, and that the instruction given was erroneous in that it failed to state that, if appellant aided and abetted DeBord in the commission of the crime, he must have done so with the intent to commit larceny, and that no evidence tending to show that appellant in fact aided and abetted DeBord in the perpetration of the larceny was introduced by the State. The evidence abundantly showed that the crime was committed jointly by appellant and DeBord. They both participated fully in its commission, and, according to the testimony of DeBord, they had also planned it together; and the instruction submitting to the jury the question of aiding and abetting in the commission of the crime could not have been prejudicial. The State based its claim solely upon the transaction described by DeBord and the other witnesses. Whatever appellant did was in connection with that transaction. They were joint principals in all that was done. It would have been better if the word "intent" had been used in the latter part of the fifth instruction; but the court, in the preceding in-

2. CRIMINAL LAW: accomplices: aiding and abetting: nonprejudicial instructions.

struction, as well as in the fore part of the sixth, told the jury that, to constitute the larceny, the acts charged must have been done with a felonious intent. The other exceptions to the instructions are sufficiently covered by the next proposition discussed.

III. But it is also insisted that Section 5299 of the Code of 1897 violates the Sixth Amendment to the Constitution of the United States and Section 10 of Article 1 of the Constitution of Iowa. Section 5299 is as follows:

"The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried and punished as principals."

It has too often been held by the Supreme Court of the United States that the first ten amendments to the Constitution have no application to the states, to require more than the citation

3. Constitutional law: Federal amendments: applicability.
of a few of the decisions so holding. *United States v. Moreland*, 258 U. S. 433 (42 Sup. Ct. Rep. 368); *Hodgson v. Vermont*, 168 U. S. 262; *Maxwell v. Dow*, 176 U. S. 581; *McNulty v. California*, 149 U. S. 645; *Nashville, C. & St. L. R. Co. v. Alabama*, 128 U. S. 96; *Hallinger v. Davis*, 146 U. S. 314; *Hurtado v. People of California*, 110 U. S. 516; *Olander v. Hollowell*, 193 Iowa 979.

The provision of the state Constitution to which appellant refers is as follows:

"Article 1, Sec. 10.  In all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial by an impartial

4. Constitutional law: criminal law: charging accessory as principal.
jury; to be informed of the accusation against him; to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and to have the assistance of counsel."

In construing this provision of the Constitution, attention should be called to the following sections of the Code of 1897.

"Sec. 5280.  The indictment must contain:

"1.  The title of the action, giving the name of the court

to which it is presented, and the names of the parties;

"2. A statement of the facts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

"Sec. 5276. When an indictment is found, the names of all witnesses on whose evidence it is found must be indorsed thereon before it is presented in the court, and must be, with the minutes of the evidence of such witnesses, presented to the court by the foreman in the presence of the grand jury, and all of the same marked filed by the clerk, as provided in the chapter relating to the duties of the grand jury, and shall remain in his office as a record."

"Sec. 5289. The indictment is sufficient if it can be understood therefrom: * * *

"5. That the act or omission charged as the offense is stated in ordinary and concise language, with such certainty and in such manner as to enable a person of common understanding to know what is intended, and the court to pronounce judgment according to law upon a conviction; * * *"

"Sec. 5315. The arraignment may be made by the court, or by the clerk or county attorney under its direction, and consists in reading the indictment to the defendant, and, unless previously done, delivering to him a copy thereof and the indorsements thereon, and informing him that, if the name by which he is indicted is not his true name, he must then declare what his true name is, or be proceeded against by the name in the indictment, and asking him what he answers to the indictment."

The constitutional provision requires the defendant "to be informed of the accusation against him; to have a copy of the same when demanded." The word "accusation" manifestly refers to the indictment, but does not in any way designate what it shall contain, nor is it concerned with the question whether one who aids and abets the commission of a crime shall be charged as an accessory or as a principal, as the statute complained of requires. It is too manifest for discussion that the statute on its face in no respect violates the constitutional provision. If it is unconstitutional at all, it is because of the construction put upon it by the court. *State v. Baldwin,* 79 Iowa

714; *State v. Munchrath,* 78 Iowa 268; *State v. Hessian,* 58 Iowa 68; *State v. Weeks,* 193 Iowa 1024; *State v. Meyer,* 180 Iowa 210; *State v. McCray,* 189 Iowa 1239; *State v. Burch,* 195 Iowa 427.

What is the right given by Section 10 of Article 1 of the Constitution, to a defendant charged on indictment with a felony? It is to be informed of the accusation against him, and on demand to be furnished with a copy thereof. It being assumed, without being so held, that this provision of the Constitution makes it the duty of the State to apprise the defendant of the nature and cause of the offense charged against him, so as to enable him to prepare for trial, the statutes already quoted make full provision therefor. The indictment alleged the date and the description of the crime and of the stolen property, together with the name of the owner and the place where the offense was committed. It is not claimed that the indictment does not charge the crime, but that it should have set out the facts which made appellant an accessory. The statutes quoted supra provide that the names of the witnesses shall be indorsed on the indictment; that the minutes of the testimony taken before the grand jury shall be attached thereto, and a copy of the whole delivered to the defendant at the time of arraignment, unless this has already been done. This is sufficient to apprise him of all facts necessary to enable him to prepare for trial.

The Constitution of Massachusetts provides that:

"No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him." Article 12.

The defendant in *Commonwealth v. Jordan,* 207 Mass. 259 (93 N. E. 809), was charged with the crime of murder, under the statutes of that state. A motion was interposed by him to quash the indictment, upon the ground that the statute upon which the indictment was based was in violation of the provision of the Constitution quoted above. The Massachusetts statute gave the defendant an absolute right to move for a bill of particulars as to the nature and cause of the offense, so as to more particularly identify it and to enable him to prepare for trial. This provision of the statute was held to fully protect the constitutional rights.

One accused of crime may not, in this state, move for a bill of particulars; but this is rendered unnecessary by the provisions of the Constitution and the statutes enacted in pursuance thereof which require a copy of the indictment, of the indorsements thereon, and of the minutes of the testimony taken before the grand jury, to be furnished to him at the time of arraignment. This would seem to be all that could reasonably be required. The question, however, can hardly be said to be an open one in this state. Section 5299 is, in substance, identical with the statute considered by the court in *Bonsell v. United States,* 1 G. Greene 111. The Constitution of the United States, which was there involved, provides that the accused shall "be informed of the nature and cause of the accusation" against him. The court held that this provision was not violated by the statute. The dissimilarity in the language of the state and Federal Constitutions on this point is apparent, and of some force, at least, in their interpretation. The exact question before us was passed upon by the Supreme Court of Colorado in *Mulligan v. People,* 68 Colo. 17 (189 Pac. 5). The court in its opinion in that case upheld the constitutionality of the statute. See, also, *People v. Moran,* 144 Cal. 48 (77 Pac. 777).

The sufficiency of the indictment to charge one as an accessory before the fact was involved in *State v. Dougherty,* 4 Ore. 200; *State v. Stewart,* 37 S. D. 263 (157 N. W. 1046); and *State v. Gifford,* 19 Wash. 464 (53 Pac. 709). Language is used by the respective courts in these cases indicating that a statute such as Section 5299 would be held to violate the constitutional provisions of those states which are similar to, or perhaps identical with, the provisions of the Sixth Amendment to the Federal Constitution. We recognize the high character of the courts which announce the above conclusions, but we are not inclined to follow them in this case.

It is our conclusion that Section 5299 in no wise contravenes the fundamental law.

Other questions are discussed by counsel for appellant, some of them involving the admissibility of certain evidence introduced by the State. A careful examination of the facts urged satisfies us that no reversible error was committed. In view of the earnestness with which the claim of appellant that he is

innocent of the crime charged is pressed upon us by his counsel, we have examined and re-examined the record with great care, and find no reversible error therein. It is our conclusion that appellant had a fair trial.—*Affirmed.*

ARTHUR, C. J., and DE GRAFF and VERMILION, JJ., concur.