# Thomas *v.* State.

## Indictment for Murder.

1. *Trial and its incidents; when remark of trial judge without prejudice to defendant.*—In the trial of a criminal case, where during the argument of counsel to the court as to the law of the case, the court asks counsel if he expected to take an appeal in the case, and stated that if he did, he would like for

[Thomas v. The State.]

him to reserve an exception as to the ruling of the court in
the organization of the jury, stating that he was anxious to·
have a decision on that point, such remark is without preju-
dice to the defendant, when, at the suggestion of his attor-
ney, the court subsequently instructs the jury that the court
did not intend by such question to intimate any opinion as to
the guilt of the defendant, and that, therefore, the inad-
vertent question should not influence the jury in rendering a
verdict in the case; such explanation of caution removing
any unfavorable impression that the remark may have oc-
casioned.

2. *Homicide; charge to the jury.*—On a trial under an indictment
for murder, where under no phase of the evidence the doc-
trine of self-defense could be invoked, and there was no
evidence that the fatal blow was struck to prevent the com-
mission of a felony, charges which predicate the acquittal of
the defendant upon the doctrine of self-defense, and of tak-
ing the life of the deceased to prevent the commission of a
felony, are properly refused as being abstract.

3. *Same; charge as to manslaughter.*—Mere words, however insult-
ing or abusive, will not serve to reduce a homicide from mur-
der to manslaughter; and where, on a trial under an indict-
ment for murder, the evidence does not show any act on the·
part of the deceased that could, under the law, be considered
by the jury as sufficient to engender that sudden passion or
heat of·blood, which under some circumstances reduces homi-
cide from murder to manslaughter, and it is shown that only
insulting or abusive language was used by the deceased just.
prior to his killing, a charge which instructs the jury that
they should find the defendant guilty of manslaughter, is.
erroneous and properly refused.

4. *Same; reasonable doubt.*—A charge which instructs the jury
that "a reasonable doubt is a doubt that a man of reason can
give if necessary," is erroneous and properly refused.

5. *Same; charge as to manslaughter.*—Where on a trial under an
indictment for murder on the undisputed evidence in a case,.
the defendant is guilty of murder, it is not error for the court
to refuse to instruct the jury, at the request of the defend-
ant, on the charge of manslaughter in the first degree.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant, Pink Thomas, was indicted and tried
for the murder of Albert Harris, was convicted of mur-

[Thomas v. The State.]

der in the second degree, and sentenced to the peniten-
tiary for thirty years.

On the trial of the case it was shown that the defend-
ant killed Albert Harris by shooting him with a shot gun
under the following circumstances: The defendant and
the deceased and the other parties hereinafter named
were at a negro party.    One Jerry Williams and Dave
Williams became engaged in a difficulty in the house
where dancing was going on.   Dave Williams ran
out of the house and Jerry Williams called to Albert
Harris, the deceased, to bring him a pistol.     Dave
Williams went out of the house to where Pink Thomas
and his brother, Dan Thomas, were standing; and Jerry
Williams joined them, and Albert Harris came up and
gave Jerry Williams a pistol.    At the instance of Dan
Thomas, Dave Williams apologized to Jerry Williams,
and that difficulty was settled.   As the parties started
back into the house, Albert Harris took Jerry Williams
to task for not shooting Dave Williams, and said that
he would have killed him himself, if he had known that
Jerry Williams was not going to shoot him, and then
turned and started on in the house.   Dan Thomas, Dave
Williams and Pink Thomas followed in the order named;
the defendant being in the rear.  After taking a few
steps, the deceased turned upon Dan Thomas, and apply-
ing an opprobrous epithet to him, asked him if he did
not believe it, and said that he would shoot him if he
opened his mouth.     Thereupon the defendant, stand-
ing behind his brother, Dan Thomas, put his gun
over Dan's shoulder and fired and killed Albert Harris.
There was no testimony that the deceased made any dem-
onstration, or that the deceased had a pistol at the time
of the shooting.

The bill of exceptions recites that "After the case had
been argued and the jury had been charged, counsel for
defendant was on his feet addressing the court and argu-
ing to the court that this was a case in which the law of
manslaughter ought to be charged, the court said:  'Do
you expect to appeal this case?  If you do, I would like
for you to have an exception to the action of the court in
excusing one of the special jurors this morning.  I am

anxious to have a decision on that.' To this remark counsel replied: 'I do not know yet what the verdict will be. Maybe the jury will acquit the defendant.' " It was then stated in the bill of exceptions that the attorney suggested to the court that the question asked about taking an appeal would convey to the jury the impression that he thought the jury should convict the defendant of some offense. The bill of exceptions recites that the judge thereupon made the following statement to the jury: "The question to Mr. Calloway was prompted by the continual annoyance here by applications by special jurors to be excused. The matter was brought to my attention just at that time, and it occurred to me that it might be well enough to have the power of the court to excuse such jurors settled in this case. It was not intended to intimate any opinion on the part of the court as to the guilt of this defendant. The court has no opinion; and if it had would be very careful to conceal it from you. I hope, gentlemen, you will not allow that inadvertent remark to influence your verdict in this case in one way or another." The defendant did not object or except to the remark of the court made to counsel otherwise than as above stated.

The defendant requested the court to instruct the jury as to the law of manslaughter in the first degree. The court refused to do this, and the defendant duly excepted to this refusal. The defendant then requested the court to give to the jury the following written charges, and duly excepted to the court's refusal to give each of them as asked: (1.) "The defendant would be excusable and ought to be found not guilty, if the evidence satisfies you (1) that Dan Thomas was without fault in bringing on the difficulty between himself and Albert Harris; (2) that Dan Thomas could not have retreated from said difficulty without increasing his danger; (3) that Dan Thomas, at the time the shot was fired by defendant, reasonably appeared to the defendant to be in imminent danger of receiving great bodily harm at the hands of Albert Harris." (2.) "If you believe that the words and acts of Albert Harris immediately preceding the shot by defendant amount to any assault upon Dan

Thomas, then you ought not to find defendant guilty of an offense greater than manslaughter in the first degree, if you believe that the shot fired by defendant was fired solely from passion aroused by those words and acts." (3.) "A reasonable doubt is a doubt that a man of reason can give if necessary." (4.) "If the jury believe from the evidence that the defendant acted from demonstration on the part of the deceased, and at that moment fired the fatal shot, in order to prevent as he thought the taking of his brother's life, then the defendant acted in self defense, if free from fault in bringing on the difficulty."

Joseph Calloway, for appellant.

Chas. G. Brown, Attorney-General, for the State, cited *Ex parte Sloane*, 95 Ala. 22; *Teague v. State*, 120 Ala. 315; *Rogers v. State*, 117 Ala. 9; *Pierson v. State*, 99 Ala. 148; *Nabors v. State*, 120 Ala. 323.

DOWDELL, J.—There was no exception reserved to the inadvertent remarks made by the presiding judge to defendant's counsel within the hearing of the jury, in regard to his appealing the case. Besides if there had been, the subsequent explanation and caution made by the court to the jury were sufficient to correct any unfavorable impression that the remarks might have occasioned.

There is no pretense that the deceased made any demonstration toward the defendant, and under no phase of the evidence could the doctrine of self-defense be invoked. Nor does the evidence show any such demonstration to have been made by the deceased toward Dan Thomas, the brother of defendant, that was reasonably calculated to produce in the mind of the defendant an honest belief that it was necessary for him to shoot the deceased to save his brother from great bodily harm. Charges Nos. 1 and 4 requested by the defendant are predicated both upon the doctrine of self-defense, and of taking life to prevent the commission of a felony; and

[Ray v. The State.]

besides being otherwise faulty were on the undisputed evidence in the case properly refused as being abstract.

The law is too well settled in this State to admit of controversy, or to call for citation of authority, that mere words, however insulting or abusive, will not serve to reduce a homicide from murder to manslaughter. The evidence does not show any act on the part of the deceased that possibly under the law could be considered by the jury as sufficient to engender that sudden passion or heat of blood, which the law says may under some circumstances reduce the homicide from murder to manslaughter. There was no error in the refusal of charge No. 2.

A charge similar to and substantially the same as No. 3, requested by the defendant, has been condemned by this court as misleading.—*Avery v. State*, 124 Ala. 20.

We have no statute in this State and we know no law in the absence of evidence from which the jury might find a lower degree of homicide than murder, that requires the court to charge upon manslaughter. On the undisputed evidence in this case the defendant was guilty of murder.

There is no error in the record and the judgment of the court is affirmed.

