[O'Rear v. Manchester Lumber Co.]

# O'Rear *v.* Manchester Lumber Co.

## *Injury to Animal.*

(Decided November 26, 1912. Rehearing denied December 7, 1912. 60 South. 462.)

1. *Railroads; Injury to Animal; Evidence.*—The evidence stated and examined and held prima facie to show that the animal was injured by the defendant's locomotive, thus placing upon the defendant the burden of disproving negligence, (Sec. 5476, Code 1907,) and hence, the court erred in giving the affirmative charge for defendant at the conclusion of plaintiff's evidence.

2. *Same; Logging Road.*—The provisions of section 5476, Code 1907, apply equally as well to logging railroads as to commercial roads.

3. *Witness; Impeachment; Own Witness.*—Where plaintiff called defendant's employee as a witness in his own behalf, and it did not appear that he was entrapped into doing so, and the defendant made no attempt to impeach the witness, it was proper not to permit the plaintiff to ask witness if he did not work for the defendant, as this was an attempt either to discredit or to add credit to the statement of his own witness.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Action by W. G. O'Rear against the Manchester Lumber Company, for damages for injury to live stock. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

NORMAN GUNN, for appellant. Under the evidence in this case the question of defendant's liability was one for the jury, and the court erred in taking the case from them.—*K. C. M. & B. v. Wagand,* 134 Ala. 391; *L. & N. v. Lancaster,* 121 Ala. 471; *So. Ry. v. Posten,* 131 Ala. 671; *A. G. S. v. Boyd,* 124 Ala. 525; *So. Ry. v. Pogue,* 154 Ala. 444.

DAVIS & FITE, for appellee. A party can neither impeach nor add credit to his own witness. This was a

logging road and hence, section 5476, Code 1907, is without application.—Secs. 5475, 5477, 5481 and 5483, Code 1907; 25 Cyc. 1547; 29 L. R. A. 209; 26 Am. Rep. 701; 10 L. R. A. 254; *Appel v. Selma S & S. Co.,* 59 South. 168.

THOMAS, J.—The appellant brought this suit against the appellee for the alleged negligence of the latter's agents, servants, or employees in the operation of a locomotive engine or train over a line of railroad tracks owned or controlled by appellee, whereby one mule, the property of appellant, was killed or disabled. The case was tried on the plea of the general issue. The defendant, appellee here, offered no evidence, but upon the conclusion of that offered by appellant requested the general affirmative charge in writing, which was given by the court; whereupon there was verdict and judgment accordingly. We are asked to review the action of the court in granting this charge.

The evidence as to how the mule came to its death was entirely circumstantial. It tended to show that on the 3d day of May, 1910, the mule was first discovered in its injured condition at a place about 400 or 500 yards from the railroad tracks of the defendant company, where it was found lying down with one of its forelegs broken near the knee joint, the broken bone protruding from the flesh, with a skinned place, bruised and swollen, on the side of its head, and other skinned and bruised places on the fore and hind legs and flanks; that the mule was tracked back to the roadbed of the defendant company, distance some 400 or 500 yards, as said; that along these tracks of the mule there were some blood signs, and occasionally some holes in the ground, as if made by the protruding bone of the broken

leg, and indications at different places where it appeared the mule had lain down; that on the railroad to where the tracks of the mule led back there was a small trestle, some 4 or 5 feet high, and that on this trestle there were blood stains and some hair of the color of that of the mule scattered over several of the cross-ties, and likewise some under the trestle; that from the trestle the mule was tracked back along defendant's said roadbed a distance of 100 or 150 yards to where it appeared to have come on from an old field. It appeared, on cross-examination of one of plaintiff's witnesses, that defendant used said railroad as a logging road, and operated locomotives over it for the purpose of hauling timber from the forest to its lumber manufacturing plant at Manchester. There was also proof of the amount of plaintiff's damages.

The foregoing circumstances, while affording no reasonable inference of negligence on the part of defendant company in the injuring or disabling of said mule, yet are sufficient, if believed by the jury, to warrant an inference that the mule came upon the track and was injured by one of defendant's locomotives at or near said trestle, though the circumstances detailed might also be susceptible of explanation on other hypotheses.

It being true that the circumstances in evidence, by fair and reasonable, though not exclusive, deduction, point to the killing or injuring of the mule on defendant's tracks by one of its locomotives or cars, the plaintiff made out a prima facie case, and the court erred in giving the general affirmative charge for the defendant, provided section 5476 of the Code, imposing on railroad companies the burden of acquitting themselves of negligence when stock is injured or killed by their locomotives and cars, is applicable to the defendant company.

—*Ill. Cen. R. Co. v. Bottoms,* 1 Ala. App. 302, 55 South. 60. The defendant, as before stated, offered no proof whatever to rebut this presumption of negligence, provided the statute mentioned applies, nor did the evidence of the plaintiff, which tended to prove the injury to the mule, do so; but the defendant's counsel, in their brief, seek to justify the action of the trial court, in giving the general charge in its favor, solely upon the ground that the statute referred to has no application to the defendant company, for the reason that it is not a railroad company, but is, as its name would indicate, a lumber company, and operates small engines, weighing, as the evidence shows, some 25 or 30 tons, and propelled by steam, over its railroad tracks, which are mere logging roads, as an incident and auxiliary to its chief business, and for the purpose of transporting timber from the woods to its manufacturing plant. No authority is cited in brief sustaining the view that such a railroad is not within the purview of the statute, and we have been unable to find any. We do find, however, that the question of the applicability of the statute to street railroads has been before this court, and before, we may add incidentally, the writer was a member thereof; and this court held that it was applicable to street railroads.—*Selma St. & Surburban Ry. Co. v. Martin,* 2 Ala. App. 542, 56 South. 601.

The last-cited case was decided by this court on November 30, 1911, and was subsequently certiorared to the Supreme Court, which reversed it on May 30, 1912 (see *Ex parte Selma St. & Surburban Ry. Co.* [Sup.] 59 South. 169), to make it conform to the opinion of that court handed down on May 14, 1912, in the case of *Appel v. Selma St. & Surburban Ry. Co.* (Sup.) 59 South. 164, where they held that the statute was not applicable to street railways.

[O'Rear v. Manchester Lumber Co.]

We have examined the latter case very carefully, with the view of making our rulings in the present case conform to that; but we do not find that the decision in that case, holding the statute not applicable to street railroads, is such as to preclude us from holding that the statute is applicable to logging railroads. In that case it is held, in effect, among other things, that, if the three preceding sections (5473, 5474, and 5475) all applied to street railroads, then section 5476 would apply to them, otherwise not; and that, since only one of the three preceding sections, to wit, section 5473, applied to street railroads, section 5476 did not do so.

While fully appreciating our duty to make our decisions conform to those of the Supreme Court, and while earnestly desiring to do so, being well aware that such is essential to the uniformity of decisions and the certainty of law, among the very greatest of desiderata, yet we do not construe this duty to require that, where that court has not expressly ruled on a question, we should be bound to reach such a conclusion on that question, when presented to us, as to exclude the possibility of the conclusion we reach conflicting with its reasoning only on a kindred, though not the identical, question.

The Supreme Court has decided, as said, employing one line of reasoning, that section 5476 is not applicable to a street railroad; while we are of opinion, employing another line of reasoning, that it is applicable to a logging railroad. Whether we could reach our conclusion in the logging railroad case on the same line of reasoning employed by them in the street railroad case, we do not know; and we are loath to attempt it, because it would entail upon us the necessity of determining whether or not sections 5473, 5474 and 5475, the three preceding sections, were also applicable to logging roads—ques-

tions not presented or hinted at, even remotely, by the record in this case, and involving additional and some different rights from the one here presented, and to a proper determination of which we would like fuller evidence as to further distinguishing features between logging railroads and general commercial railroads in particulars which might be material in deciding those questions. Hence we do not decide whether said sections 5473, 5474, and 5475 are applicable to logging railroads or not, though upon a casual consideration it would appear that they are.

However, neither this court nor the Supreme Court has ever held that any one of said three sections is not applicable to a logging road; and until this is done we are, when holding that section 5476—the one under consideration—is applicable to logging railroads, saved from an implication that, in so doing, we are reaching a conclusion that cannot be sustained by the reasoning of the Supreme Court when it held that section 5476 was not applicable to street railroads because the three preceding sections were not. This being true, we cannot escape the duty of dealing in our own way with the question of the applicability of section 5476 to logging railroads—a question with which that court has not dealt.

Said section reads as follows: "A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply with the requirements of the three preceding sections, or any negligence on the part of such company or its agents, and *when any person or stock is killed or injured,* or other property destroyed or damaged, *by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show* a compliance with the requirements of such sections, and

*that there was no negligence on the part of the company
or its agents."*

There is, of course, in some particulars, a wide differ-
ence, as contended by appellee's counsel, between log-
ging railroads, on the one hand, and general, or com-
mercial, railroads, to whom the statute is confessedly ap-
plicable, on the other; notably, in the purposes for which
they are operated—one is a private road used for the
convenience and accommodation of lumbermen; while
the other is a common carrier, and for the use of the
universal public in the transportation of persons, bag-
gage, and freight.

However, both have one thing in common, and that is
a railroad track; and both operate over it cars or loco-
motives propelled by some motor power, like steam, elec-
tricity, or gasoline; and when so propelled, though use-
ful indeed, have yet proved to be dangerous instrumen-
talities, even when carefully operated, frequently run-
ning over and killing or injuring persons and stock, and
that often at times and places where there are not wit-
nesses to the accident save the crew, or a portion of
it, that is operating the locomotive.

The three sections (5473, 5474, and 5475) next pre-
ceding the one under consideration were evidently
grounded in a legislative aim to protect life and proper-
ty against the negligence of those employing such dan-
gerous instrumentalities by requiring that class of them
operating under conditions which bring them within the
terms and spirit of those sections, respectively, to take
certain precautions looking to public safety therein
prescribed; while the section under consideration (5476)
is, we think, intended, not only to impose a liability
upon that class to whom either or all of the three pre-
ceding sections is applicable, for a failure to comply
with the section as applicable, when there has been re-

.sultant injury, and to afford a rebutable presumption
that they have not complied, but goes further, and in
the concluding portions, we think imposes on all classes,
whether operating or not under conditions which bring
them within the purview of either of the preceding sec-
tions, a liability for "any negligence" on their part,
and furnishes a means of proof of such negligence, which,
as said, quite often lies exclusively within the breast of
the wrongdoer himself, by presuming its existence until
rebutted by proof to the contrary.

The case in hand presents a concrete illustration and
justification of the wisdom of the statute in the latter
particular.   Here the plaintiff has a mule injured or
disabled under such circumstances as to warrant a rea-
sonable inference that it was done by the train of cars
of defendant.  Was it negligently done?   Even if it was,
the plaintiff, but for the aid of the statute, likely fails,
because, as we infer from the record, nobody saw it,
except the defendant's agent or agents operating the
train, who are opposed to plaintinff in interest, and yet
he cannot make them his witnesses without vouching
for their veracity.   If there was no negligence, the de-
fendant is in better position to prove it than the plain-
tiff is to prove negligence, in event there was any; hence
the wisdom of the statute.   The first portion of section
5476, reading as follows, "A railroad company is liable
for all damage done to persons, or to stock or other
property, resulting from a failure to comply with the
requirements of the three preceding sections," we think,
clearly means, also, what we would, after the last word
quoted, add by construction, "or a failure to comply
with the requirements of either of such sections," and
has reference, we think, not only to persons and corpor-
ations operating a railroad under conditions which make
all the three preceding sections applicable to them, but

also to those operating under conditions which make
either of the preceding sections applicable to them;
while the remaining portion of said section 5476, read-
ing as follows, "and when any person or stock is killed
or injured, * * * by the locomotive or cars of *any rail-
road,* the burden of proof, in any suit brought therefor,.
is on the railroad company to show a compliance with
such sections ['so applicable to it, if any,' we would in-
sert by construction], and that there was no negligence
on the part of the company, or its agents," we think,
has reference, not only to all persons and corporations.
operating railroads under such conditions that all the
three preceding sections would apply to them, not only
to all such as operate them under such conditions as that
only one of the preceding sections would be applicable
to them, but also to those to whom they would become
applicable if the railroad should ever be operated under
such conditions as to bring them within the purview of
either of said three preceding sections. All of the three
classes mentioned must prove, we think, under the re-
quirements of section 5476, "*that there was no negli-
gence on the part of the company or its agents;*" and
the class to whom only one of the three preceding sec-
tions is applicable must go further and prove a compli-
ance with the requirements of that particular section;
and that class to whom all the three preceding sections
are applicable must go still further and prove a compli-
ance with all of said sections; but the class to whom
none of said three preceding sections have become appli-
cable would only be required to prove "that there was.
no negligence on its part or that of its agents."

The last portion of section 5476 is, we think, broad
and comprehensive, and designed to reach all persons.
and corporations who operate a railroad, whether chief-
ly or only incidentally, whether as a common carrier

or only for private convenience. It concerns itself with the instrumentality employed—proved by experience to be dangerous—and not with the character of business carried on by means of that instrumentality. Hence we think the section is applicable to logging railroads; and that therefore the lower court erred in giving the defendant the general affirmative charge.

The court did not err in refusing, upon objection of defendant, to permit plaintiff to ask the latter's witness Fountain if he did not now work for the defendant company. It was clearly but an attempt on the part of plaintiff either to discredit his own witness, when plaintiff is not shown to have been entrapped into putting him on the stand, or to add credit to his own witness, when defendant had not in any way impeached him or attempted to do so.

We find no merit in the other assignments of error, and, as the questions presented would not likely arise on another trial, we will not discuss them.

For the error in giving the general charge for defendant, the cause is reversed.

Reversed and remanded.