# Givens v. The State.

## *Manslaughter.*

(Decided June 3, 1913.   62 South. 1029.)

1. *Homicide; Participation by Accused; Evidence.*—Where the fatal shot was fired by the step-son of the defendant almost immediately after defendant had knocked deceased down, taken in connection with the other evidence, it was sufficient to carry to the jury the question as to whether defendant was responsible for the act of his step-son.

2. *Same; Persons Liable; Aiding and Abetting.*—Under the facts in this case defendant was responsible for the acts of his co-defendant only if they were acting in concert, either as the result of a previously formed conspiracy or a presently created understanding, or if defendant connived or consented to the shooting, or encouraged it either by words or conduct.

3. *Same; Evidence; Attendant Circumstances.*—Where the shot was fired by a co-defendant in the presence of the defendant, the shooting by the co-defendant was admissible as a part of the res gestæ, and as tending to show defendant's connection therewith.

4. *Same; Instructions; Defense of Another.*—A charge asserting that defendant should be acquitted if the fatal shot was fired in defense of his wife, was properly refused because not predicated upon facts or circumstances which would have justified the wife in taking life in self-defense.

5. *Same; Participation by Accused.*—Where the actual killing was done by another, a charge requiring an acquittal unless the jury should find that the shot was fired with the preconceived knowledge, assent, connivance and agreement of defendant, was erroneous as requiring all these elements to be found, while one would have been sufficient.

6. *Criminal Law; Evidence; Sufficiency of Proof.*—The law does not require positive proof of any fact in a criminal prosecution; it is sufficient if the circumstances shown afford a reasonable inference of the existence of the fact.

7. *Charge of Court; Doubt of Uncertainty.*—Charges should be predicated upon a reasonable doubt, and hence, charges requiring an acquittal if the jury are left in uncertainty or doubt, or upon a state of confusion in their minds, are properly refused.

APPEAL from Russell Circuit Court.

Heard before HON. MIKE SOLLIE.

Jake Givens was convicted of manslaughter in the first degree and he appeals. Affirmed.

GLENN & DE GRAFFENRIED, for appellant. The only possible theory upon which the shooting of deceased by the codefendant was admissible was either that the two were parties to a conspiracy, or that defendant aided and abetted, neither of which theories were established by the evidence, nor was a sufficient predicate laid in the evidence for their admission.—*Phoenix I. Co. v. Moog,* 78 Ala. 284; *Street v. State,* 43 Ala. 1; *McAnally v. State,* 74 Ala. 9; *Ex parte Tally,* 102 Ala. 25; *Turner v. State,* 124 Ala. 59; *Jordan v. State,* 81 Ala. 20; *Harmon v. State,* 166 Ala. 28. Under these authorities, before defendant could be convicted, there must have been proof of a conspiracy, and the charges requested should have been given.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The contention is not made that defendants were together by preconcert, but that being together, they entered into a common illegal purpose, and both, therefore, were equally guilty.—*Amos v. State,* 83 Ala. 1; *Kennedy v. State,* in MSS. Before one may kill as a defender of another, the person being defended must be in position to establish self defense.—*Weaver v. State,* 1 Ala. App. 48. The other charges require a too high degree of proof as to the conspirarcy, as the law requires only facts from which a reasonable inference of a conspiracy can be drawn.

THOMAS, J.—The defendant, Jake Givens, was jointly indicted with Ed Smith for the murder of Monk Holman; one count charging the murder to have been committed by shooting deceased with a gun and the other by striking him with a stick. The defendant was tried separately and convicted of manslaughter in

the first degree and given a sentence of eight years. He introduced no evidence at the trial, and the case was submitted to the jury alone upon the evidence offered by the state, which consisted of the testimony of only three witnesses, one of whom was the physician who examined the deceased and who testified only that his death resulted, not from the blow with the stick (which it apears defendant administered), but from a gunshot wound (which it appears the codefendant, Ed Smith, inflicted). At the conclusion of the testimony of each of these witnesses, the defendant moved to exclude it and urges here that the court erred in overruling the motion, basing his insistence upon the ground that the proof without conflict shows that the codefendant, Ed Smith, actually fired the shot that killed deceased, and fails to show that the defendant was connected with the killing in any such way as to make him criminally responsible for the act of said codefendant, Ed Smith.

It is perhaps necessary to an understanding of the disposition we make of this question that we should review briefly the facts. It appears that shortly before the fatal difficulty, which occurred on a Sunday in the public road, five persons were seen passing in a group along the road by Will Chambers' store, to wit, the defendant, Jake Givens, his codefendant and stepson, Ed Smith, his stepson, Lonzo Smith, his wife, Samantha Givens, and deceased, Monk Holman; the two former walking in front, the other two next, and the deceased following some 16 or 25 feet behind. At the time the parties passed a quarrel or argument over a dollar was in progress and going on between deceased, who, as said, was following in the rear, and the defendant, who, with the codefendant, was in front. The defendant was heard to say to the deceased, "I don't owe you any dollar," to which deceased replied with an oath, "You do

owe me a dollar, and you are going to pay me to-day."
As the parties proceeded further down the road in this
fashion, still quarreling, the defendant was seen, when
the group had reached a point about 40 or 50 yards
beyond the store, to pick up by the roadside a stick that
looked to be a wagon standard, whereupon, and shortly
afterwards, the deceased was seen to approach nearer
to the defendant, and one witness says deceased then
struck at or cut at defendant with his knife, though it
does not appear that he struck him or even touched
him; and the other witness says he did not see deceased
with any knife nor see him strike at defendant. The
defendant then (his codefendant and stepson standing
in the road by him at the time) struck deceased so vio-
lently on the head with the stick or wagon handle,
which he had before picked up, as to fell deceased to
the ground, whereupon the codefendant, Ed Smith, shot
and killed deceased. As to just how soon the shot was
fired and the circumstances under which it was fired,
the only two witnesses (each of whom, we infer, was
some distance off) differ. One of these witnesses tes-
tified that the shot was fired just about the same time
that defendant struck deceased with the stick; in his
language, "The shot and the lick was about the same
time;" and he further stated that he did not see Saman-
tha Givens, defendant's wife, run in between defendant
and deceased after deceased was knocked down by the
lick from defendant and before deceased was shot, and
"that deceased did not get up cutting at her [Samantha
Givens] and while cutting at her get shot." The other
witness testified, however, that, when defendant struck
and knocked deceased down, his wife, Samantha Giv-
ens, ran in between the two saying, "Quit, Jake!" and
pushed defendant, her husband, back and that the de-
ceased, while getting up, staggering, from the ground,

was cutting outward from himself toward said Saman-
tha Givens, the mother of codefendant, Ed Smith, and
that the latter did not pull his pistol and fire at deceas-
ed until deceased was getting up and cutting toward
codefendant's mother, who was some four feet away.

Of course if the defendant in striking deceased had
no further purpose than merely to inflict a battery upon
him, and there was no conspiracy, preconcert, or com-
mon design or understanding between him and the code-
fendant that the latter was to help him should the need
arise, and he did not counsel, incite, procure, or consent
to the latter's act; or even if there was such an under-
standing, and the latter willfully exceeded the common
purpose by killing deceased, when he knew it was not
necessary to the accomplishment of the common pur-
pose, and in doing so acted independently of, and with-
out reference to, such purpose, and without the consent,
counsel, incitement, or procurement of defendant, but
from particular malice or motives of his own, whether
to punish for a real or supposed affront to his mother or
otherwise, the defendant would not be responsible for
the act of his codefendant, Ed Smith, in killing de-
ceased.—*Martin v. State,* 89 Ala. 119, 129, 8 South. 23,
18 Am. St. Rep. 91; *Jordan v. State,* 79 Ala. 9; *Jordan
v. State,* 81 Ala. 32, 1 South. 577; *Frank v. State,* 27
Ala. 42; *Amos v. State,* 83 Ala. 4, 3 South. 4, 3 South.
749, 3 Am. St. Rep. 682; *Tidwell v. State,* 70 Ala. 33;
*Tanner v. State,* 92 Ala. 1, 9 South. 613; *Brunson v.
State,* 124 Ala. 37, 27 South. 410; *J. Van Smith v. State,
Infra,* 62 South. 575. But on the other hand, if the co-
defendant was acting in concert with defendant and to
aid and abet him in an unlawful purpose to kill deceas-
ed or even to inflict bodily harm upon him, either as the
result of a previously formed conspiracy or present
created understanding between them, or if the codefend-

ant was incited or encouraged by the defendant, either by words or conduct, to do the act, or defendant connived at or consented to its being done, then the defendant would be responsible for the act of this codefendant, Ed Smith, in killing deceased. Authorities supra. As to which theory of the case the facts sustained was a question for the jury. They were certainly ample in the inferences to be drawn from them to warrant and require a submission by the court of them to the jury; and it did not err in declining to exclude them.

The law does not require positive proof of any fact; it is sufficient if the circumstances proved afford a reasonable inference of the existence of the fact.—Authorities supra.

For this reason the court properly admitted proof that codefendant, Ed Smith, fired the shot that killed deceased, and all the circumstances of it. Besides being admissible for the reason stated, such fact was also clearly admissible as a part of the res gestæ.—Smith v. State, 52 Ala. 407.

The defendant requested this charge: "The court charges the jury that if they believe from the evidence in this case, beyond a reasonable doubt, that Ed Smith shot deceased in defense of Ed Smith's mother, then the jury must acquit the defendant." It is sufficient to say in criticism of this charge, without adverting to other considerations which would condemn it in this case, that the right of a son to kill in defense of his mother, when she is assailed, depends upon her right to kill in defense of herself when she is so assailed. As to whether the mother had the right to defend herself under the circumstances would depend upon whether she was free from fault in bringing on the difficulty, and, if so, whether she could not have retreated and

saved the necessity of taking life in order to protect her own or her person from great bodily harm. It is therefore clear from a mere casual reading of the charge here that it ignores every element requisite to the right of self-defense.

The defendant also requested the following written charge, to wit: "The court charges the jury that if from all the evidence in this case they are left in uncertainty or doubt as to whether or not, at the moment Ed Smith fired the fatal shot, he was acting in defense of his mother, then you must acquit the defendant."

Besides being properly refused because faulty for reasons already given in consideration of the other charge, and further faulty in that it is not a correct exposition of the law, which requires a conviction unless the jury have a *reasonable* doubt of defendant's guilt, it is furthermore, under recent rulings of our Supreme Court, where all the previous cases are reviewed, never now reversible error for the trial court to refuse charges predicted upon a doubt or uncertainty, one or both, or upon a state of confusion in the minds of the jury. Whether the trial court will be put in error for giving such charges is not there decided, but it is settled that it will not be reversed for refusing them.—*A. G. S. R. R. Co. v. Robinson* (Sup.) 62 South. 813.

Charge No. 3 refused to defendant reads: "The court charges the jury that, unless they believe from the evidence beyond a reasonable doubt that Ed Smith shot Monk Holman as the result of the preconceived knowledge, assent, connivance, and agreement of this defendant, then you must find the defendant not guilty." It will be observed that the charge is in the conjunctive and requires, before defendant can be held responsible for the act of Ed Smith, a belief on the part of the jury that there should have been a preconceived knowledge,

[Langston v. The State.]

a preconceived assent, a preconceived connivance, and agreement on the part of defendant as to such act. This does not correctly state the law as declared in the cases on the subject hereinbefore cited. For these and other reasons not necessary to discuss, charge 4, which is similar in some respects to charge 3, was also properly refused.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.