49 So.2d 284

**STOKLEY v. STATE.**

**2 Div. 283.**

Supreme Court of Alabama.

Dec. 7, 1950.

See also 34 Ala.App. 576, 41 So.2d 780.

536

Scott & Porter, of Chatom, and Rogers & Evans, of Butler, for appellant.

A. A. Carmichael, Atty. Gen., and Geo. W. Cameron, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appellant, Clinton Stokley, was tried in the circuit court of Choctaw County under an indictment charging that he unlawfully and with malice aforethought killed Jesse M. Morgan, alias Sug Morgan, by striking him with a piece of scantling or a stick. The jury returned a verdict of murder in the first degree and fixed defendant's punishment at life imprisonment in the penitentiary. Judgment was in accord with the verdict. Defendant's motion for a new trial having been denied and overruled, he has appealed to this court.

The evidence for the State tended to show, among other things, as follows:

The deceased, Jesse Morgan; the defendant, Clinton Stokley; and the defendant's cousins, Horace Stokley, Alvin Stokley, and Pete Singley, all lived in or near a rural community known as Stokleytown, situate a short distance from the town of Silas, in Choctaw County. They had all been friends until a short time prior to the difficulty which resulted in the death of the deceased. A short time before the difficulty the deceased, Jesse Morgan, had told one Joe Stokley that he had seen defendant's dog "on" one of Joe Stokley's cows. Joe Stokley killed defendant's dog. The State's evidence tends to show that defendant held a grudge against deceased because he had told Joe Stokley about his dog.

On a Saturday afternoon in May, 1949, the deceased went to Silas. The defendant and his three cousins went there also. While the defendant was in Silas, he inquired of his cousin, Alvin Stokley, whether he had seen deceased. Alvin replied in the negative. The deceased left Silas in the middle of the afternoon and returned to his home.

Later in the afternoon the defendant and his cousins, Horace Stokley, Alvin Stokley, and Pete Singley, were seen on the Stokleytown road a comparatively short distance

from the home of deceased. They had some whisky with them. Clinton Stokley, the defendant, was heard to offer his cousin Alvin either $2.00 or $2.50 and a pint of whisky to go and get someone to leave his home and join them. The evidence supports the inference that Clinton had reference to the deceased. After this offer was made to him, Alvin Stokley drove off in his automobile, leaving Clinton and Horace behind. It appears that Clinton and Horace were in Clinton's automobile.

On their way home from Silas, some neighbors of the deceased, namely, Mr. and Mrs. Joe Morgan, with whom deceased's son J. C. was riding, saw the defendant and Horace Stokley and Pete Singley sitting on the side of the Stokleytown road, with the defendant's automobile nearby. Alvin Stokley was not present. The Morgans stopped and talked with defendant. Mr. Morgan had a drink with him. The defendant and his companions had at that time almost three pints of whisky. The defendant inquired as to the whereabouts of the deceased and said, "I am going to whip that s— of a b— before the sun goes down or he is going to whip me one."

After Alvin left Clinton and Horace, he contacted his nephew, Toby Taylor, a boy fifteen years of age, whom he sent to the home of deceased to find out if he was at home. Upon arriving there, Toby joined the members of the family of deceased and the family of Lige Gibson, a brother-in-law of deceased, on the back porch of deceased's home and ate some ice cream with them. After eating the ice cream, Toby left and reported to Alvin that the deceased was at home. Later Toby came back to the home of deceased and told him that Alvin wanted to see him out in his car. The deceased and Lige Gibson joined Alvin and Toby, who were in Alvin's automobile, which was parked in the road in front of deceased's home. Alvin and deceased talked about a fishing trip in the presence of Toby and Lige Gibson. Alvin then told deceased that he wanted to talk to him privately and the two of them went to a point approximately twenty-five feet behind the automobile, where they engaged in conversation. Upon coming back to the automobile, deceased said to Alvin as follows: "I will not go up on the road and meet these boys, but I will talk with them anywhere I meet them or see them at the house." The deceased and Lige Gibson then returned to deceased's home and joined their families on the back porch.

A short time after they had gotten back to the house, Clinton Stokley and his cousins, Horace Stokley and Pete Singley, came to the gate leading to the home of deceased and called to him to come down and talk with them. The defendant and Pete Singley had sticks in their hands. The deceased went to the front of his house and then began walking toward the gate, followed a short distance by his wife and brother-in-law, Lige Gibson. When deceased was a short distance from the gate, the defendant, Clinton Stokley, and Pete Singley began to curse the deceased and told him he had told a damn lie when he told Joe Stokley that it was defendant's dog which had been "on" a cow belonging to Joe Stokley.

Deceased's wife, evidently apprehending trouble, caught hold of her husband, who weighed only 115 to 120 pounds, and when she did so defendant and Pete Singley jumped over the ditch and defendant hit deceased with a stick. The blow either knocked deceased out of the grasp of his wife or he eluded her. Thereupon the defendant and deceased engaged in a fight. They fell into a ditch, with defendant on top of deceased. While they were in the ditch, the wife of deceased secured a stick and she and the deceased's father, who had arrived at the scene and who was more or less an invalid, went to the assistance of the deceased. Mrs. Morgan received head injuries. A short time after the difficulty started, George Stokley, an uncle of defendant, who lived across the road from deceased and on whose property deceased was living, arrived at the scene and soon after his arrival the fighting in the ditch ceased. When the defendant got out of the ditch, he ran toward his car, which was parked in the road somewhere between the home of deceased and that occupied by Mr. George Stokley. Deceased ran after defendant, whereupon Pete Singley hit the deceased with a stick, knocking him into a

fence and onto the ground. When Pete Singley hit the deceased, deceased was in the road approximately twenty to twenty-five yards from the place in the ditch where deceased and defendant had been fighting.

Horace Stokley took no active part in the encounter, but was standing on the outside of the gate with his hands in his pockets or under his shirt, and in a threatening way told Lige Gibson not to go to the defense of his brother-in-law. Alvin Stokley was sitting in his automobile, parked in the road a short distance away from the scene of the difficulty.

The deceased was able to walk to his home with the assistance of his brother-in-law. Shortly after getting there, he became paralyzed and unconscious and was taken to the hospital in Butler, where the attending physician recognized the seriousness of his condition and recommended that he be taken to a brain specialist in Birmingham. This was done. Deceased arrived at a hospital in Birmingham sometime the next afternoon. He was still paralyzed and unconscious. An operation was performed. He died before ever regaining consciousness. The cause of death was attributed to a severe blow on the head of the deceased.

The evidence for the defendant tended to show that on the afternoon of the difficulty he drove to Silas in his automobile, arriving there around two o'clock. At about three o'clock he met his cousin, Pete Singley, who had walked from his home in or near the Stokleytown community, to Silas. While in Silas the defendant did not inquire of Alvin Stokley whether or not he had seen the deceased and, in fact, the defendant did not see Alvin Stokley in Silas. Later in the afternoon the defendant and Pete Singley left Silas enroute to the home of Ted Stokley, another cousin, who lived on the Stokleytown road beyond the point on the road where the deceased lived. After they had turned off the main highway onto the Stokleytown road, they picked up another cousin, Horace Stokley, who was walking. The three of them proceeded in the defendant's car in the direction of the home of Ted Stokley, whom they were to get to go to a dance with them, in accordance with arrangements previously made. They did not see Alvin Stokley on the Stokleytown road and the defendant did not offer Alvin Stokley any money or a pint of whisky to go and lure the deceased away from his home. They did not encounter Joe Morgan and his wife and J. C. Morgan, the son of deceased, and the defendant did not threaten the deceased as these people had testified on behalf of the State. As they were proceeding on the Stokleytown road, the battery cable on defendant's car became loose. The car was stopped at what is termed the forks of the road near the home of George Stokley, the uncle of the defendant. George Stokley lived almost across the road from deceased. Horace Stokley remained at George Stokley's home while the defendant and Pete Singley proceeded toward the home of Ted Stokley on foot. They did not call the deceased from his home, but when they got immediately in front of the home of deceased, deceased ran out of his house toward the gate, followed very closely by his thirteen-year-old daughter. A short distance behind was the deceased's wife and his brother-in-law, Lige Gibson. The deceased, when a few feet from his gate, which was almost on the road, told the defendant he had told some lies on him and deceased picked up a syrup bucket and threw it at defendant, hitting him on the left side of his face. Deceased opened the gate, whereupon deceased and defendant engaged in a fist fight and soon fell into a ditch on deceased's premises, with defendant on top of deceased and each of them striking the other with his fists. Defendant did not strike deceased with a stick, as testified to by witnesses for the State; and the deceased's wife was not holding him, as the State's witnesses claim. In fact, neither the defendant nor Pete Singley had any weapon of any kind in their hands as they were walking down the road or when the fight started, and defendant never did have a stick or weapon of any kind.

While they were fighting in the ditch, the wife of deceased and deceased's father-in-law both came to the assistance of deceased and hit the defendant, causing multiple bruises and cuts on his body. The fight in

the ditch was broken up by the intervention of Mr. George Stokley, defendant's uncle. Shortly after this fight was ended, the deceased picked up a stick about one inch wide and about three feet long, whereupon the defendant ran out of the yard of deceased into the public road toward the place where his car was parked. The deceased pursued him with the stick in his hand, raised in a threatening manner. Deceased had reached a point estimated at from fifteen to thirty yards from the place in the ditch where the fight occurred when defendant called to Pete Singley to stop the deceased, whereupon Pete Singley hit deceased with a stick, which Singley had picked up after he had seen the stick in the hand of the deceased. The blow struck by Singley was the only time the deceased was hit with a stick or a weapon of any kind. Neither the defendant nor Singley hit the wife of deceased. Horace Stokley was not present when the fight started and took no part in it whatsoever. Alvin Stokley was not present and did not drive up in his car until after the fight was over.

There was evidence for the defendant introduced for the purpose of impeaching several of the witnesses for the State.

Counsel for appellant, defendant below, strenuously insist that under the evidence defendant was entitled to the general affirmative charge requested in writing and refused by the trial court.

It is argued that under the indictment which charges that defendant killed Jesse Morgan by striking him with a piece of scantling or a stick, it was incumbent upon the State to prove that the defendant himself struck the deceased as charged in the indictment, and that death resulted from that blow, and that the State failed to make such proof.

We will show hereafter the incorrectness of appellant's insistence that under the indictment a conviction could be had only on proof that defendant actually struck the blow that killed deceased.

■ But even if such a contention were correct, the defendant was not entitled to the general affirmative charge as requested. The evidence for the State, as shown above, is to the effect that the defendant hit deceased with a "piece of scantling" or "something that looked like a post." Although the evidence is undisputed that Pete Singley hit deceased with a "limb" or stick, there is nothing in the evidence to indicate that the blow delivered by Singley was the sole cause of Morgan's death or that the blow delivered by defendant did not contribute thereto. There was a conflict in the evidence as to whether defendant struck deceased as charged in the indictment, but that conflict, as well as the other conflicts in the evidence, was for the jury's determination. It was the deceased's wife and his brother-in-law who testified that defendant struck deceased as charged, and it was the privilege of the jury to consider this relationship in determining what weight it should have in considering their testimony; but such relationship did not compel the jury to disbelieve them any more than the jury was compelled to disbelieve the testimony of defendant and his cousin, Pete Singley, because of their interest in the case. The fact, if it be a fact, that the testimony of several of the State's witnesses is unreasonable and unworthy of belief, as insisted upon by appellant's counsel, was a question for the jury. Ross v. State, 74 Ala. 532; Martin v. State, 18 Ala. App. 303, 92 So. 37. It has been said by the appellate courts of this state on many occasions that the credibility of a witness is for the jury. Ex parte Warrick, 73 Ala. 57; Byrd v. State, 213 Ala. 333, 104 So. 830; Murray v. State, 13 Ala.App. 175, 69 So. 354.

■ If the jury believed from the evidence beyond a reasonable doubt that defendant struck deceased as charged and that such blow was a dangerous blow and contributed to the death of deceased, then the defendant would be guilty of the homicide, notwithstanding the jury may not have believed that the death would have inevitably followed from that blow alone, and notwithstanding they may not have believed that there was any preconcert or community of purpose between defendant and Pete Singley. Huckabee v. State, 159 Ala. 45, 48 So. 796; Talley v. State, 174 Ala. 101, 57 So. 445; Daughdrill v. State,

113 Ala. 7, 21 So. 378; Henderson v. State, 11 Ala.App. 37, 65 So. 721.

But even if there had been no evidence tending to show that the appellant struck deceased as charged in the indictment, he would not have been entitled to the general affirmative charge, with hypothesis, because of such failure of proof.

By § 14, Title 14, Code 1940, it is provided: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

Such provisions have been a part of our statutory law since as early as the Code of 1852, wherein they were codified as § 3526.

■ But appellant insists that this section does not authorize the conviction of one charged in the indictment with having been the actual perpetrator of the crime upon proof of a conspiracy or that he aided or abetted in the commission of the crime. But this court held to the contrary in the case of Jolly v. State, 94 Ala. 19, 10 So. 606. In that case the defendant was indicted for an assault with intent to murder. The evidence did not tend to show that he actually committed the assault. He requested several charges which were, in effect, the same as the contention made here by counsel for appellant. Illustrative of the charges is Charge No. 1, which read as follows: "The defendant is charged with an assault with intent to murder, and not for conspiracy to commit the same; and before any person can be convicted for being a conspirator to commit an assault with intent to murder, he must be so charged under a separate section of the Code, and when alone indicted for the offense of an assault with intent to murder, he can not be convicted as a conspirator." In upholding the action of the trial court in refusing that charge and the others similar thereto, this court said:

"It was contended for the defendant, as shown by a number of charges requested, that on an indictment charging him with an assault with intent to murder he could not be convicted on proof that he was a conspirator, and aided or abetted in the commission of the offense, but that it must be shown that he committed the assault in person. That this contention was not well founded is shown by the above statement of the law on the subject. Charges 1, 4, 9, 10, 13, and 15 involved the erroneous proposition just stated, and were properly refused." 94 Ala. 24, 10 So. 607.

To like effect see State ex rel. Attorney General v. Tally, Judge, 102 Ala. 25, 15 So. 722; Morris v. State, 146 Ala. 66, 41 So. 274; McMahan v. State, 168 Ala. 70, 53 So. 89; Thompson v. State, 29 Ala.App. 124, 193 So. 323.

It is further insisted by counsel for appellant that § 14, Title 14, Code 1940, is unconstitutional in that it violates the Sixth Amendment to the Constitution of the United States, which provides in part that "In all criminal prosecutions, the accused shall enjoy the right *. * * to be informed of the nature and cause of the accusation;" and that it also violates § 6, Art. 1, of the Constitution of this state, which provides in part, "That in all criminal prosecutions, the accused has a right to * * * demand the nature and cause of the accusation".

■ As to the insistence that § 14, Title 14, supra, violates the Sixth Amendment to the Constitution of the United States, it is sufficient to say that the Sixth Amendment is not a restriction on the states. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L. Ed. 1595; People v. O'Neill, 78 Cal.App. 2d 888, 179 P.2d 10, certiorari denied, 333 U.S. 858, 68 S.Ct. 728, 92 L.Ed. 1137; State v. Smith, 158 La. 129, 103 So. 534; State v. Burch, 199 Iowa 221, 200 N.W. 442; Harris v. State, 34 Wyo. 175, 242 P. 411; Agnes v. People, 104 Colo. 527, 93 P. 2d 891. To like effect see Noles v. State, 24 Ala. 672; Coleman v. State, 150 Ala. 64, 43 So. 715; Walker v. State, 150 Ala. 87, 43 So. 188. We might add that in the federal courts one charged in an indictment as a principal may be convicted on proof

of aiding and abetting. 18 U.S.C.A. § 550 [now § 2]; Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; United States v. Knickerbocker Fur Coat Co., Inc., 2 Cir., 66 F.2d 388, certiorari denied, Zuckerandel v. U. S., 290 U. S. 673, 54 S.Ct. 91, 78 L.Ed. 581; Von Patzoll v. United States, 10 Cir., 163 F.2d 216. See also Rosencranz v. United States, 9 Cir., 155 F. 38.

■ No case has come to our attention wherein we have considered the question of whether or not § 14, Title 14, supra, violates § 6, Art. 1, of our State constitution. The case of Noles v. State, 24 Ala. 672, has some bearing on the question. However, we are in accord with the holdings of the majority of the courts of other states, which are to the effect that statutes identical with or similar to § 14, Title 14, supra, are not violative of provisions of the state constitutions similar to § 6, Art. 1, of our Constitution. Scharman v. State, 115 Neb. 109, 211 N.W. 613; Sanditen v. State, 22 Okl.Cr. 14, 208 P. 1040; State v. Geddes, 22 Mont. 68, 55 P. 919; State v. Burch, 199 Iowa 221, 200 N.W. 442; State v. Steeves, 29 Ore. 85, 43 P. 947.

■ It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Morris v. State, 146 Ala. 66, 41 So. 274, and cases cited; Jones v. State, 174 Ala. 53, 57 So. 31; Teague v. State, 245 Ala. 339, 16 So.2d 877.

■ When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. Jones v. State, supra; Jolly v. State, supra; Tanner v. State, 92 Ala. 1, 9 So. 613.

■ Although the jury may not have believed that the defendant struck the deceased as charged in the indictment, or, if so, that the blow delivered by him did not contribute in the least to the death of deceased, yet, if they did believe from the evidence beyond a reasonable doubt that there was preconcert or community of purpose between the defendant and Pete Singley, this would render the defendant responsible for the act of Pete Singley, although they intended only a battery upon deceased, and would warrant a verdict of guilty against defendant, unless Pete Singley acted independently of the common purpose and killed deceased for malice and motives of his own, and was not at the time previously incited thereto by defendant. The following authorities so amplify and apply these principles to states of facts similar to those here that a further discussion on this point is rendered unnecessary. Jordan v. State, 79 Ala. 9; Jordan v. State, 81 Ala. 20, 32, 1 So. 577; Jordan v. State, 82 Ala. 1, 2 So. 460; Martin v. State, 89 Ala. 115, 8 So. 23, 18 Am.St.Rep. 91; Amos v. State, 83 Ala. 1, 3 So. 749, 3 Am. St.Rep. 682; Tidwell v. State, 70 Ala. 33; Tanner v. State, 92 Ala. 1, 9 So. 613; Brunson v. State, 124 Ala. 37, 27 So. 410; Frank v. State, 27 Ala. 37; State ex rel. Attorney General v. Tally, 102 Ala. 25, 15 So. 722; Morris v. State, 146 Ala. 66, 41 So. 274; Givens v. State, 8 Ala.App. 122, 62 So. 1020; Smith v. State, 8 Ala.App. 187, 62 So. 575; Williams v. State, 81 Ala. 1, 1 So. 179, 60 Am.Rep. 133; Pierson v. State, 99 Ala. 148, 13 So. 550; Evans v. State, 109 Ala. 11, 19 So. 535.

■ There was no error in overruling defendant's objection to the question propounded by the solicitor to State's witness

McIlwain: "Do you remember the Saturday that Sug Morgan or Jesse Morgan was said to have been beaten?" This question was merely introductory to the further examination of the witness, the materiality of which was fully developed. Questions of this character, if answered affirmatively, are often necessary to show the opportunity of the witness to know the facts to which he may testify on further examination. Stoball v. State, 116 Ala. 454, 23 So. 162.

 The trial court did not err in permitting the State to show the conversation between Alvin Stokley and deceased. At the time this evidence was admitted, there was ample evidence in the case tending to show the existence of a conspiracy between defendant and his three cousins, including Alvin Stokley, to do bodily injury to deceased. Hence, all that was said and done in furtherance of the common design by any one of the conspirators was admissible in evidence against the other conspirators. Collins v. State, 138 Ala. 57, 34 So. 993. The principle on which such acts and declarations are admissible is that by the act of conspiring together, the conspirators have jointly assumed to themselves, as a body, the attributes of individuality, so far as necessary to pursue a common design; thus rendering whatever is done or said in furtherance of that design a part of the res gestae, and therefore the act of all. Scott v. State, 30 Ala. 503. Under this rule, statements made by the deceased to Alvin Stokley, tending to show that the purpose of Alvin's visit to deceased was to lure him away from his home, in accordance with the request of the defendant, were admissible.

 The State was properly permitted to show that deceased's wife was injured at the same time as her husband and to show the nature of her injuries, this being part of the res gestae. Caldwell v. State, 203 Ala. 412, 84 So. 272; Canty v. State, 244 Ala. 108, 11 So.2d 844; Grant v. State, 250 Ala. 164, 33 So.2d 466; Parsons v. State, 251 Ala. 467, 38 So.2d 209; Snead v. State, 251 Ala. 624, 38 So.2d 576.

 On the preliminary hearing, Helen Morgan, the thirteen-year-old daughter of deceased, testified on behalf of the State. The State did not call her on the trial of this case, although she was subpoenaed and present. The defendant sought to introduce the certified transcript of her testimony given on preliminary hearing. The State's objections were sustained. There was no exception, and hence the question is not here for review. But in any event, the ruling of the trial court was correct under our decisions, as this witness was available to the defendant if he had wished to call her. Bush v. State, 19 Ala. App. 650, 100 So. 307, 312. See Woodard v. State, 253 Ala. 259, 44 So.2d 241.

 The trial court did not err in refusing to permit the defendant to show that his witness George Stokley, a kinsman of defendant, upon whose farm deceased lived, had used his influence on some previous occasion to get deceased released from a peace bond proceeding. Counsel for appellant contend that this testimony was relevant and admissible not only to show deceased's character for peace and quiet, but chiefly for the purpose of showing the friendliness of the witness George Stokley toward deceased. Even if it be conceded that, under the evidence, the defendant was entitled to show that the character of the deceased was that of a violent, turbulent and bloodthirsty man, an inquiry of this character must relate to reputation. It is not permissible to show specific acts of conduct. Moreover, the evidence here sought would have injected into the trial an issue foreign to those involved in this trial. Davis v. State, 21 Ala.App. 649, 11 So. 645. See Helms v. State, Ala.Sup., 47 So.2d 276. Nor was the evidence sought to be elicited admissible on the theory that it tended to show that the defendant's witness George Stokley was friendly to the deceased. There had been no evidence showing that he was not friendly toward deceased. On the contrary, it was without dispute that they had been friends. A party is not permitted to add credit to his own witness by showing his lack of interest or bias or relationship when the opposite party has not

attempted to impeach him. See O'Rear v. Manchester Lumber Co., 6 Ala.App. 461, 60 So. 462; Parker v. State, 10 Ala.App. 53, 65 So. 90; 70 C.J. 946, § 1147.

As heretofore shown, defendant's evidence is to the effect that he and his cousins, Horace Stokley and Pete Singley, were on the way to the home of another cousin, Ted Stokley, to get him to go to a dance when defendant's car broke down in front of the home of deceased. Ted Stokley was called as a witness for defendant and testified that he saw defendant about eleven or twelve o'clock on the morning of the difficulty and they made plans to go to a dance about four or five o'clock that afternoon, but that he didn't go to the dance because he went to sleep and defendant did not come after him. On cross-examination this witness stated that he went to bed about 12:30 or one o'clock on the afternoon of the difficulty. Thereupon the State asked him, "What was your condition when you went to bed?" Defendant's objection was overruled and exception interposed. The witness answered, "I was sleepy." Even if it be assumed that this question was beyond the proper scope of cross-examination, it is certain that the answer to the question was without injurious effect upon defendant.

■■ In brief filed here, complaint is made of several other rulings of the trial court on admissions and exclusion of evidence. We will not discuss these rulings, since they are not here for review, no exceptions having been reserved to the lower court's rulings. Bennett v. State, 248 Ala. 664, 29 So.2d 217. This case is not governed by the provisions of the automatic appeal statute. Act of June 24, 1943; see § 382(10), Title 15, 1949 Cum. Pocket Part, Vol. IV, Code 1940.

■ No exception was reserved to the remarks of the trial court made in response to a question asked by a member of the jury; hence no question relative thereto is presented for review. Thomas v. State, 126 Ala. 4, 28 So. 591; O'Neal v. State, 18 Ala.App. 425, 93 So. 49; Davis v. State, 20 Ala.App. 131, 101 So. 171.

The trial court refused defendant's written requested Charge No. 1, which reads as follows: "The Court charges the Jury that if they believe from the evidence that Defendant, Clinton Stokley and Pete Singley were passing near Jesse Morgan's house on the afternoon the killing is said to have been done, and an offense was committed by one of them from causes having no connection with the common object for which they happened to be there, the responsibility for such offense rests solely on the actual perpetrator of the crime, and the Jury cannot find Defendant guilty simply because he happened to be present at the time the offense was committed."

■ As before pointed out, if several persons conspire to do an unlawful act—an act *malum in se*—all the members of such illegal combination are responsible for the acts of each, done in pursuit of their common purpose.

■ However, if an offense is committed by one or more of them, from causes having no connection with the common object, the responsibility for such offense attaches exclusively to its actual perpetrator. Frank v. State, 27 Ala. 37; Jordan v. State, 79 Ala. 9, 13; Williams v. State, 81 Ala. 1, 5, 1 So. 179. In such cases it is a question for the jury whether the act done was in prosecution of the purpose for which the party had assembled or confederated, or was independent, of it, and without any previous concert. Frank v. State, supra.

■ This is the principle which the defendant sought to have brought to the attention of the jury by requesting written Charge No. 1. The principle was not covered by the court's oral charge or any given written charge. We are constrained, therefore, to hold that for the refusal of defendant's requested Charge No. 1, this case must be reversed. Evans v. State, 109 Ala. 11, 19 So. 535; Way v. State, 155 Ala. 52, 46 So. 273. In the cases last cited, this court reversed the trial court for refusing to give charges in practically the same language as defendant's requested Charge No. 1. See Charge 30 in Evans v. State, supra, and Charge 62 in Way v. State, supra. The State seeks to sustain the action of the trial court in refusing defendant's requested Charge No. 1 on the ground that it was

abstract as to the facts of this case. We think it sufficient answer to this contention to say that if the charge was not abstract in the case of Evans v. State, supra, the charge in this case cannot be held to be abstract, for the facts of the two cases are very similar.

The trial court also refused to give defendant's written requested Charge No. 3, which is as follows: "I charge you, Gentlemen of the Jury, that if the evidence in this case convinces you that there is a probability of the Defendant's innocence, then your verdict should be not guilty."

This charge has had a rather checkered career in our cases. In the early cases it was held that the refusal of such a charge constituted reversible error. Croft v. State, 95 Ala. 3, 10 So. 517; Whitaker v. State, 106 Ala. 30, 17 So. 456; Morris v. State, 146 Ala. 66, 41 So. 274. However, the more recent decisions of this court and of the Court of Appeals hold that the refusal of such a charge is not reversible error, particularly where, as here, the trial court adequately instructed the jury that the defendant must be acquitted unless shown to be guilty beyond a reasonable doubt. Edwards v. State, 205 Ala. 160, 87 So. 179; Russo v. State, 236 Ala. 155, 181 So. 502; Wilson v. State, 243 Ala. 1, 8 So. 2d 422; Napier v. State, 26 Ala.App. 597, 164 So. 307; Reeves v. State, 28 Ala.App. 222, 182 So. 90; Duncan v. State, 31 Ala. App. 186, 13 So.2d 695. To like effect see Odom v. State, 253 Ala. 571, 46 So.2d 1.

It is strenuously insisted in brief filed here on behalf of appellant that the trial court erred in refusing to grant a new trial on the ground that the jury had not been kept together while the case was in progress. We pretermit any discussion of this question because the judgment of the trial court must be reversed for the error heretofore pointed out. Helms v. State, ante, p. 14, 47 So.2d 276.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

FOSTER, LIVINGSTON, and STAKELY, JJ., concur.